THE STATE v. C. B. THOMAS, *Appellant.*

Division Two, March 10, 1897.

| 138 | 95 |
|-----|-----|
| 144 | 84 |
| 138 | 90 |
| 160 | 267 |
| 160 | 347 |
| 138 | 95 |
| 154 | 470 |
| 154 | 477 |
| 154 | 479 |
| 138 | 95 |
| 167 | 689 |

1. **Constitutional Law**: POOLSELLING AND BOOKMAKING. The case of *State v. Walsh,* 136 Mo. 400, holding unconstitutional the Act of March 12, 1895, which prohibited poolselling, bookmaking, etc., "except on the premises or within the limits or inclosure of a regular race course," is affirmed.

2. **Laws**: POOLSELLING: REPEALING CLAUSE OF AN UNCONSTITUTIONAL LAW. When the evident purpose of a repealing clause of an act, which has been and is held to be violative of the Constitution, is to displace an old law and substitute the unconstitutional act in its stead, the repealing clause will also fall when the main act falls, and will not be held to affect the old act in anywise. The act of March 12, 1895, Laws of 1895, page 150, was declared unconstitutional in *State v. Walsh,* 136 Mo. 400, and that decision is affirmed herein; that act undertook to repeal the act of April 1, 1891, Laws

State v. Thomas.

of 1891, page 122, by declaring "all acts or parts of acts inconsistent or in conflict with the foregoing section are hereby repealed;" *held* that the act of 1895, being unconstitutional, did not repeal the ac- of 1891.

3. **Constitutional Law**: POOLSELLING AND BOOKMAKING: SPECIAL LAWS: EXEMPTIONS BY IMPLICATION. But the act of April 1, 1891, Laws of 1891, page 122, which prohibits the selling of pools and reg- istering of bets "upon the result of any trial or contest which is to take place beyond the limits of this State" but exempts, by implica- tion, all persons who make such wagers on "contests which are to take place within this State," is *held* to be violative of the Constitution, article 4, section 53, clause 1, which prohibits the General Assembly from passing "any local or special law."

4. ————: ————: GENERAL AND SPECIAL LAWS. The act of 1891 is a special law because it separates offenders who gamble on events to occur *outside* of this State from those who do the very same things as to events occurring *within* this State; prescribes *punishment* for the former, and *protection* for the latter, and this as effectually as though such protection were granted in terms. The act thus divides a natural class into two portions, making two classes out of one, and arbitrarily enacts different rules for the government of each.

*Appeal from St. Louis Court of Criminal Correction.*— HON. DAVID MURPHY, Judge.

REVERSED.

*T. J. Rowe* and *Morris, Butler & Fitzgerald* for appellant.

(1) The "bookmaking and poolselling act" of March 12, 1895 (Laws of Mo. 1895, page 150), upon which the information herein is bottomed, grants spe- cial privileges and immunities in violation of section 15, article 2, and section 53, article 4, of the Constitu- tion of Missouri. (2) Said act fractures the four- teenth amendment to the Constitution of the United States, in denying the defendant the equal protection of the law. (3) Defendant's motion to quash information should have been sustained. The information fails to state facts sufficient to constitute a violation of section

1 of Act of March 12, 1895, entitled, "An act to prohibit book-making and pool-selling at any place other than upon the premises of regular race courses, with emergency clause." Session Acts 1895, p. 150; *State v. Townsend,* 50 Mo. App. 690; *State v. Walsh,* 136 Mo. 400.

*Edward C. Crow,* attorney-general, for the State.

SHERWOOD, J.— This prosecution was instituted under the provisions of section 1 of an act in relation to bookmaking and poolselling. Laws of 1895, p. 150.

This section was set forth at large and fully discussed in *State v. Walsh,* heretofore decided, in which case it was ruled that the act in question was unconstitutional. We still adhere to that ruling. But since writing the opinion in the foregoing case, the thought has occurred to us whether the law of 1895 aforesaid, being unconstitutional, though it contains a repealing section, has really operated to repeal the act of 1891 in relation also to bookmaking and poolselling. Laws of that year, p. 122. That law is the following:

"*An act to prohibit book-making and pool-selling:*

"Section 1.—BOOK-MAKING AND POOL-SELLING DEFINED, AND PENALTY PRESCRIBED.

"*Be it enacted by the General Assembly of the State of Missouri, as follows:*

"Section 1. That any person who keeps any room, shed, tenement, tent, booth or building, or any part thereof, or who occupies any place upon any public or private grounds within this State with any book, instrument, or device, for the purpose of recording or registering bets or wagers, or selling pools, upon the result of any trial or contest of skill, speed or power of endurance of man or beast which is to be made or to take place beyond the limits of this State; or any person

who records or registers bets or wagers or sells pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast which is to be made or to take place beyond the limits of this State, or upon the result of any political nomination, appointment or election which is to be made or held either within or beyond the limits of this State, or being the owner, lessee, or occupant of any room, shed, tenement, tent, booth or building, or part thereof, knowingly permits the same to be used or occupied for any of the purposes hereinabove prohibited, or therein keeps, exhibits, or employs any device or apparatus for the purpose of recording or registering such bets or wagers or selling of pools as are hereinabove prohibited, or becomes the custodian or depository for hire or privilege of any money, property or thing of value which is staked, wagered or pledged contrary to the provisions of this act, shall be guilty of a misdemeanor, and on conviction, shall be punished by imprisonment in the county jail for a period of one year, or by a fine of one thousand dollars, or both: *provided*, that it shall be unlawful to make and sell said pools, combinations, and book-bets to minors; and any person selling said pools, combinations and book-bets to any minor shall be deemed guilty of a misdemeanor, and on a conviction, shall be punished by imprisonment in the county jail not less than three nor more than twelve months. Approved April 1, 1891.''

It will be observed on comparison of the two acts that the chief and substantial difference between them is, that while the act of 1891 applies only to ''contests of skill, speed, etc., which are to take place *beyond* the limits of this State,'' the act of 1895 applies to such contests whether occurring within or without this State, and that act also contains a certain proviso which confers exemption upon those who ply the same calling as

is denounced in the same section against others, provided such avocation be pursued "on the premises or within the limits or inclosure of a regular race course on which such contest of speed is had, and at and prior to the time thereof." Then follows the repealing section which repeals "all acts or parts of acts inconsistent or in conflict with the foregoing section."

1. Now, did the act of 1895 repeal that of 1891? Though there seems to be some conflict, or apparent conflict, in the authorities as to whether a repealing clause in an unconstitutional law repeals the original law, yet it is believed that the great weight of authority, and the better reasoning announce the negative of that position.

As already stated, we have decided that the act of 1895 is unconstitutional and void. This being the case, we have to determine the force and effect of that repealing clause or section when considered in reference to the prior section of that act.

On all hands it is agreed that when a law has been adjudged unconstitutional, *it is no law at all.* Rights which rest, or contracts which depend, upon it, are void; it constitutes no protection to one who has acted under it; and affords no punishment to one who has refused obedience to its mandates before the decision was made. Cooley's Const. Lim. [6 Ed.], 222.

Like the house built upon the sand, when the rains, and the floods, and the winds of judicial criticism descend, and come and blow and beat upon it, it falls, and it is as if it had never been. In short, such act being *a nullity,* there is nothing upon which the repealing clause can operate, because there is no law in existence which can be inconsistent or in conflict with an act void by reason of its unconstitutionality.

The case then stands in legal contemplation, as if the repealing section were the *only one* enacted by the

legislature, in which event but one opinion could be entertained as to the non-effectiveness of such a repealing section as that which now confronts us in the act of 1895. In other words, when, as here, the evident purpose of the repeal is to displace the old law and substitute the new in its stead, the repealing section or clause, being dependent on that purpose of substitution, necessarily falls when falls the main purpose of the act.

Authorities very numerous abundantly sustain this position. Cooley's Const. Lim. [6 Ed.], 220; *Campau v. Detroit*, 14 Mich. 276; *Sullivan v. Adams*, 3 Gray, 476; *State v. Judge*, 11 Wis. 50; *Tims v. State*, 26 Ala. 165; *Devoy v. Mayor*, 35 Barb. 264; *Childs v. Shower*, 18 Iowa, 261; *People v. Fleming*, 7 Colo. 230; *Portland v. Schmidt*, 13 Ore. 17; *Darby v. City*, 76 N. C. 133; *Allen v. Louisiana*, 103 U. S. 80; *Black v. Trower*, 79 Va. 123; *Jones v. Jones*, 104 N. Y. 234; *Fant v. Gibbs*, 54 Miss. 396; *Eckhart v. State*, 5 W. Va. 515; *Virginia Coupon Cases*, 114 U. S. 270; Sutherland, Stat. Construc., secs. 135, 136, 174.

Under these reasons and authorities it must be held that the act of 1891 remains unaffected and unrepealed by anything contained in the later act. This result brings into view the validity of the act of 1891, inasmuch as the information filed in the court below counts on a horse race occurring without this State. So that the question of constitutionality has been shifted from the act of 1895 to its statutory predecessor.

2. Is then the act of 1891 in accord with the Constitution? It is true that act does not in terms designate as exempt those gamblers or other offenders who are not embraced within the penalties it prescribes, but nevertheless it does exempt them as effectually as though they, i. e., those who gamble on results to occur in this State, had been expressly named and exempted. What a statute will imply is as much part and parcel of a leg-

islative enactment as though set forth in terms.    *State ex rel. Lemon v. Buchanan Co.*, 108 Mo. *loc. cit.* 242; s. c.,18 S. W. Rep. 782; Sutherland, Stat. Construc., sec. 334, and cases cited.

And "where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others; there is then a natural inference that its application is not intended to be general." Sutherland, Stat. Construc., sec. 327.

For illustration, suppose the legislature should by law denounce penalties and punishments against gamblers who ply their vocation on the south sides of all streets which run east and west in the cities and towns in this State, would not such an act confer protection on all those who dealt cards in all other localities in such cities and towns save those mentioned.   Of this there can be do doubt.   The act of 1891 really grants to all offenders, to wit, those who bet on results to occur within this State, or sell pools to minors as to results to occur therein, an immunity from punishment not enjoyed by those who bet on results to occur *outside* of this State, or who sell pools to minors based on such results, and in this it violates section 53, article 4, clause 1, of our Constitution, being a special law which grants special and exclusive rights to those not mentioned as criminals in the act of 1891.

And that act is a special law because it separates offenders who gamble on events to occur *outside* of this State, or who sell to minors pools based on such results, from those who do the very same things as to events occurring *within* this State; prescribes *punishment* for the former, and provides *protection* for the latter, and this as effectually as though such protection were granted in terms.   The act thus divides a natural class into two portions, making two classes out of one, and thus in effect arbitrarily enacts different rules for the

government of each.  *State v. Julow,* 129 Mo. 163; *State v. Walsh, supra.*

And we consider that the proviso in the act of 1895 discussed in *Walsh's* case, does not, for reasons already given in that and in the present case, cause the act of 1891 essentially to differ from the act now under consideration.    Each act either in direct terms or by necessary and inevitable implication, confers exclusive privileges not warranted but prohibited by the Constitution, and each directly or else indirectly creates two classes out of one and the same class of persons.

3.  In addition to what is above said, we have carefully examined the evidence in this case, and find nothing on which to base a conviction even if we regarded the act of 1891 constitutional, which we do not. Therefore we reverse the judgment and discharge defendant.

All concur.