In re Application of C. E. French for Writ of Habeas Corpus.

Court en Banc, June 17, 1926.

1. **WITNESS—Commissioner of Finance.** There is no valid statute forbidding the State Bank Commissioner to divulge information obtained by him in the examination of a bank and material to the issues in the trial of a civil case.

2. **CONSTITUTIONAL LAW: Special Act: Limited Classification.** A clasification for legislative purposes must rust upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed. It cannot be an arbitrary classification. The General Assembly may enact laws applicable to a particular class of individuals, but such laws must bear equally upon all individuals coming naturally within the class.

3. ———: ———: ———: **Bank Examinations: Divulgence in Civil Trial.** Section 11679, Revised Statutes 1919, as amended in 1923 and 1925, permitting the Commissioner of Finance, his deputies and examiners, to furnish information, obtained in the examination of a state bank, to the Federal Reserve Board, Federal Reserve banks, the U. S. Comptroller of the Currency, or their examiners, and to clearing houses in the State of Missouri and their examiners, authorizes the divulgence to those institutions and officers of information which the statute forbids to other creditors or debtors of a state bank, and is therefore an unconstitutional classification, and violates that part of the Fourteenth Amendment forbidding any State to make or enforce a law denying to any of its citizens the equal protection of the laws, and Subdivision 26 of Section 53 of Article IV of the Constitution of Missouri which forbids the General Assembly to pass any local or special law "granting to any corporation, association or individual any special or exclusive right, privilege or immunity." The act gives to a Federal Reserve bank and such other institutions and officers the power, in a civil case brought by them, to compel the Commissioner of Finance to divulge information he has obtained in an examination of a state bank, and denies that privilege to all other creditors of the same bank, and makes an arbitrary and unreasonable classification.

4. ———: **Encroachment upon Judicial Functions: Bank Reports and Information: Use in Civil Case.** The provision of Section 11679, as amended in 1923 and 1925, commanding the Commissioner of Finance to keep secret all facts and information obtained in the course of all examinations of a state bank "except when he is called on as a witness in any criminal proceedings or criminal trial in a court of justice" impairs and interferes with the enforcement of rights in a civil case, and is an unconsti-

tutional encroachment upon the proper functions of the courts, in violation of the guaranty of Section 10 of Article II of the Constitution that "the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character." Said provision does not exempt the Bank Commissioner from divulging the information and producing the records and reports he has obtained in the examination of a bank, in the trial of a civil suit brought by creditors or debtors of the bank against its officers. The Legislature cannot deprive courts of the use of evidence necessary and pertinent to a proper determination of the issues in any case, criminal or civil.

5. ———: ———: ———: **Public Policy.** Public policy does not authorize the enactment of a statute restraining the Commissioner of Finance from divulging what he learns in his examination of banks or from producing in a trial in court the records and reports in his custody. No public interest can be adversely affected by revelations of the methods by which a defunct bank was guided to its destruction, nor will a general knowledge of its affairs, brought to light by a trial in court, injuriously affect public morals, public health or public safety, nor is the public interest served by concealing the inside jobs which caused it to fail.

---

Corpus Juris-Cyc. References: **Constitutional Law,** 12 C. J., Section 285, p. 825, n. 43 New; Section 833, p. 1117, n. 63 New; Section 855, p. 1129, n. 18; p. 1130, n. 28, 30, 31; Section 951, p. 1185, n. 88 New. **Witnesses,** 40 Cyc., p. 2391, n. 8.

## *Habeas Corpus.*

PRISONER REMANDED.

*North T. Gentry,* Attorney-General, and *W. F. Frank,* Assistant Attorney-General, for petitioner.

The sole point in this case is the proper construction of Section 11679, Laws of Missouri, 1925, page 230. This statute is expressed in language so plain that it admits of but one meaning and leaves no room for construction. (1) Rules for the interpretation of statutes will not be applied when the language of the statute is plain. Grier v. Railway Co., 286 Mo. 534; State ex rel. v. Board of Education, 294 Mo. 115. The question giving rise to this case is whether or not the Commissioner of Finance can be compelled to reveal the information he obtains in the course of examination of a bank when called upon to do so as a witness in the trial of a civil case in a court of justice. It seems clear from the language used that the Legislature did not intend that such information should be used in the trial of a civil case. It prohibits the Commissioner from giving such information except in the trial of a criminal case or in a criminal proceedings. The word "criminal" does not appear before the word "trial" in the law as it existed in 1923, the then Commissioner of

Finance was subpoenaed as a witness in a civil case. Millspaugh v. Kesterson, 270 S. W. 110. The Legislature in 1925, with knowledge of the fact that the statute of 1923 did not contain the word "criminal" before the words "trial in a court of justice," and with knowledge of the fact that this court in Millspaugh v. Kesterson construed the 1923 statute and held, in effect, that the word "criminal" did not apply to the words "trial in a court of justice," and that the exception in the statute covered both civil and criminal cases, amended the statute of 1923 by adding the word "criminal" before the words "trial in a court of justice." It cannot be successfully argued that the statute in its present form is unreasonable or unfair in that it permits the use of information contained in the records of the Finance Department as evidence in a criminal case, but denies their use in a civil case when valuable property rights are at stake, for the reason that such matters are no concern of the courts. Such an argument might, with propriety, be addressed to the Legislature. (2) It cannot be said that the statute in question violates Section 30 of Article II of the Constitution of the State in that it deprives litigants in civil cases of their property without due process of law, for the reason that every citizen of the State who becomes a litigant in a civil case is denied the use of the records of the Finance Department as evidence in his case. In other words all citizens similarly situated receive exactly the same treatment. Due process of law is a matter of statutory regulation. City of St. Louis v. Galt, 179 Mo. 17.

*Elmer O. Jones* and *Dupuy G. Warrick* for respondent.

(1) Sec. 11679, R. S. 1919, as amended by Laws 1923, page 222, and as amended by the Laws 1925, page 230, is in conflict with Article IV, Section 53, Subdivision 26, of the Constitution of Missouri, which provides: "The General Assembly shall not pass any local or special law . . . granting to any corporation, association or individual any special or exclusive right, privilege or immunity." In re Flukes, 157 Mo. 125; Lige v. Railroad Co., 275 Mo. 249; State ex rel. v. Railroad Co., 246 Mo. 512; Moler v. Whisman, 243 Mo. 571; 12 C. J. 1196, 1183. This statute in terms provides that the Commissioner of Finance may disclose merely, upon request, to Federal Reserve banks, the examiners of such corporations, and to clearing house associations, all facts or information which may come to him in the course of his official duties touching the affairs of any state bank under his control, but denies to all banks which are not members of a clearing house and to all individual citizens of Missouri the right to obtain like information, even by use of the lawful process of courts of record. Manifestly this is an arbitrary and unreasonable classification and

is therefore discriminatory and constitutes a grant of special and exclusive rights and privileges to these corporations and associations, contrary to the explicit said provisions of the Constitution. State v. Swagerty, 203 Mo. 517; State v. Washburn, 167 Mo. 680. (2) This statute violates Section 1 of the Fourteenth Amendment of the Constitution of the United States. (a) Permitting the disclosure of information to a particular class of corporations and denying like privileges to every other citizen, is a manifest denial of the equal protection of the laws. 12 C. J. 1144, 1147, 1149, 1196; Buchanan v. Warley, 245 U. S. 60; In re Slaughter House Cases, 16 Wall. 36, 21 L. Ed. 394; Com. v. Inter. Harv. Co., 131 Ky. 551, 115 S. W. 703; American Tobacco Co. v. William, 115 S. W. (Ky.) 755; State v. Railroad Co., 246 Mo. 512. (b) This statute violates the due-process clause of the Fourteenth Amendment by imposing an arbitrary, unreasonable and discriminatory denial of evidence to individual citizens, and to all corporations not members of clearing houses in Missouri, which amounts to a virtual denial of the right to a full and free hearing in a court of justice. 12 C. J. 1206; Bailey v. Alabama, 219 U. S. 219, 55 L. Ed. 191; In re Op. of Justices, 208 Mass. 619, 34 L. R. A. (N. S.) 771; State v. Griffin, 154 N. C. 611; Hammond v. State, 78 Ohio, St. 15, 15 L. R. A. (N. S.) 906; Columbia Valley Tr. Co. v. Smith, 56 Ore. 6, 107 Pac. 465; In re Flukes, 157 Mo. 125; Taylor v. Anderson, 137 Pac. 1183; State v. Strasburg, 60 Wash. 106, 110 Pac. 1020. (c) "Due Process" has always been construed by every court in the land to mean equality before the law and an equal right and opportunity to preserve and protect one's property, in courts of justice. This statute arbitrarily discriminates between individual citizens and corporations, including banking corporations which are not members of clearing houses in Missouri, on the one hand, and Federal Reserve banks and banks belonging to clearing houses in Missouri, on the other hand, by giving to the latter free access to the records of the State Banking Department for the protection of their property rights, but denying to the former access to the same records. State v. Ashbrook, 154 Mo. 375, 394; In re Flukes, 157 Mo. 125, 51 L. R. A. 176; San Francisco Board of Education v. Alliance Ins. Co., 159 Fed. 994; 12 C. J. 1185; People v. Sholem, 238 Ill. 203; 12 C. J. 1190; Story on Const. Lim., sec. 1935; Caldwell v. Texas, 137 U. S. 692, 34 L. Ed. 816. (3) This statute violates the express provisions of Article II, Section 10, Constitution of Missouri. By denying to the individual citizen and to non-banking corporations and banking corporations which are not members of clearing houses in Missouri, the right to compel the production of records of this important state department, this statute, if valid, would operate as a denial of justice, and a denial of "a certain remedy . . . for every injury to . . . property," as guaranteed

by this provision of the Constitution.   Cement Co. v. Gas Co., 255 Mo. 1; In re Flukes, 157 Mo. 125.

WHITE, J.—The petitioner filed his application in this court asserting that he is restrained of his liberty by Marion Shoop, Sheriff of Adair County, and the pretext of such restraint is this:   A civil suit was pending in the Circuit Court of Adair County in the case of Florence Hunter Funk, plaintiff, v. C. H. Charlton et al., defendants, and was being tried March 10, 1926.   The petitioner, French, Commissioner of Finance of the State of Missouri, was served with subpoena to appear before said court and testify in said case. He was sworn, and while testifying as a witness he was asked to produce in evidence the written reports in his possession made by the state bank examiners on the Union Bank of Novinger, Missouri, for the years 1918, 1919, 1920.   He also was asked to produce all written reports made by said Union Bank of Novinger, or its officers, to the Department of Finance, touching the condition of said bank and its affairs during the years 1918, 1919 and 1920.   The petitioner refused to produce said evidence, whereupon the circuit court adjudged him in contempt, and ordered that he be confined in the county jail of Adair County until he should signify his willingness to produce the evidence.

The petitioner further says that the statute of the State of Missouri, Section 11679, Revised Statutes 1919, as amended by the laws of 1925, require him to keep secret all information obtained by him in the examination of banks, except when called as a witness in a criminal proceeding or trial, subjecting him to a fine for a misdemeanor and forfeiture of office for giving such information.

Attached to the petition is a transcript of the judgment and commitment, and the evidence taken at the time.   This evidence shows French was Commissioner of Finance of the State of Missouri; that he had in his possession all the original reports of examinations of the Bank of Novinger for the years 1918, 1919 and 1920, prepared by the Deputy Commissioners of Finance; all the original written reports of the Bank of Novinger, or its officers and directors, touching the condition of the bank and its affairs for the years 1918, 1919 and 1920; carbon copies of all correspondence of the bank with the office of the Commissioner of Finance during those years.   When asked to produce those records he refused to do so, and was committed for contempt, as stated in his petition.

Upon the filing of the petition this court issued its writ March 15, 1926, commanding the sheriff to produce the body of French, together with the time and cause of his detention and imprisonment. To this Shoop made his return that he, as Sheriff of Adair County, pursuant to an order of the circuit court of that county, which judgment and commitment he set out, held said French by virtue of said

order and commitment. The petitioner for reply admitted the facts stated in respondent's return, and for further reply reasserts the same facts set forth in his petition and asks to be discharged.

I.   The sole question before us is the construction of Section 11679, Revised Statutes 1919, as amended in 1923 and 1925, as follows:

"Sec. 11679.   *Secrets of Office Not to be Divulged—Exceptions.*— The Bank Commissioner, his deputies, clerks, stenographer, each examiner and every employee shall be bound under oath, to keep secret all facts and information obtained in the course of all examinations, except so far as the public duty of such officer requires him to report upon or take special action regarding the affairs of any bank, private banker, savings and safe deposit company or trust company, and except when he is called on as a witness in any criminal proceedings or criminal trial in a court of justice. If any bank commissioner, deputy, clerk, stenographer or examiner shall disclose the name of any debtor of any bank, private banker, savings and safe deposit company or trust company, or anything relative to the private accounts, affairs or transactions of such bank, private banker, savings and safe deposit company or trust company, or shall disclose any facts obtained in the course of his or their examination of any such bank, private banker, savings and deposit company or trust company, except as herein provided, he shall be deemed guilty of a misdemeanor, and upon conviction thereof in a court of competent jurisdiction, be subject to a forfeiture of his office and the payment of a fine of not less than one hundred dollars, nor more than one thousand dollars, provided, however, that the bank commissioner, his deputies, and each examiner may furnish to the federal reserve board, the federal reserve banks, or to examiners duly appointed by the federal reserve board, or the federal reserve banks, the comptroller of the currency of the United States, or to examiners duly appointed by him, the clearing houses in the State of Missouri and examiners duly appointed by them, copies of all examinations made, and may disclose to such federal reserve board, federal reserve banks, comptroller of the currency, clearing houses, or examiners, any information with reference to the condition of affairs of state banks or trust companies organized under the laws of this State. And the Bank Commissioner, his deputies and examiners shall, with respect to all banks, trust companies and savings companies in which state funds are on deposit, furnish to the state treasurer access to reports of all examinations made, of such institutions, and shall, upon request from the state treasurer, disclose to him any information or facts with reference to the condition of the affairs of any such bank, trust company or savings company, obtained in the course of any such examination, which the state treasurer may desire to know; and the

state treasurer, his deputies, clerks and stenographers shall be under the same obligation to keep secret all facts and information thus obtained as is by this section imposed upon the Bank Commissioner, his deputies, clerks, stenographers and examiners, and for a violation of such duty they shall be deemed guilty of a misdemeanor and subject to the penalty herein provided.''

In the case In re Millspaugh, 307 Mo. 185, and Millspaugh v. Kesterson, 270 S. W. 110, this court had under consideration and construed that section as it stood by the amendment of 1923. The constitutionality of the statute was not raised. The only substantial change made in the first part of the section by the amendment of 1925, was in the following clause: ''Except when he is called on as a witness in any criminal proceeding or (criminal) trial in a court of justice,'' the word ''criminal'' in parenthesis being inserted. The court held that the Commissioner of Finance was obliged to testify in a civil as well as in a criminal trial.

The petitioner argues that the amendment of 1925 shows a clear intention of the Legislature to avoid the effect of that decision, and make it certain that the exception to the provision which prevents the Bank Commissioner from testifying in court applied only in criminal cases. That no doubt was the intention of the Legislature in making the amendment. The Commissioner of Finance is plainly forbidden to divulge what he learns in the examination of banks, even though such information is required of him by a court of justice in a civil case.

II. The respondent challenges the constitutionality of that statute on the ground that it violates the Fourteenth Amendment to the Federal Constitution which forbids any State to make or enforce any law which denies the ''equal protection of the laws,'' and also that it is in conflict with Section 53, Subdivision 26, of Article IV of the Constitution of Missouri, which forbids the General Assembly to pass any local or special law ''granting to any corporation, association or individual any special or exclusive right, privilege or immunity.''

The section permits the Bank Commissioner, his deputies and examiners to furnish information, which they obtain from an examination of a bank, to the Federal Reserve Board, Federal Reserve banks, the U. S. Comptroller of the Currency, or their examiners; to clearing houses of the State of Missouri, and their examiners. These are excepted from the restriction which binds him, under penalty, as for a misdemeanor, to reveal to any person the result of such examinations. This feature of the statute is clearly contrary to the equal protection clause of the Federal Constitution, and Subdivision 26, Section 53, of Article IV of the State Constitution. [In re

Flukes, 157 Mo. 125, 1. c. 132; State v. Baskowitz, 250 Mo. 1. c. 107; State v. Walsh, 136 Mo. 400; State ex rel. v. C. B. & Q. R. R. Co., 246 Mo. 512.] The rule stated by Cooley in his Constitutional Limitations and quoted several times by this court governing this principle, is as follows:

"A statute would not be constitutional . . . which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt. . . . Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments." [In re Flukes, 157 Mo. 1. c. 132.]

A classification for legislative purposes must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed. It cannot be an arbitrary classification. The Legislature may pass laws applicable to a particular class of individuals, but such laws must bear equally upon all individuals coming naturally within the class. The Legislature may not classify by characteristics or qualities which might distinguish individuals unless that distinction applies to the particular matter under consideration.

For what purpose could Federal Reserve Banks desire information in possession of the Commissioner of Finance obtained from examination of State banks, except it might be useful to them as creditors or debtors of such State banks, or as having some other business relations with it? Likewise the Federal Reserve boards and clearing houses of the State of Missouri could have no use for such information except as they represent creditors, debtors, or persons having certain business relations with such banks. No reason appears, either in the act or in the circumstances shown in this case, which would distinguish between such persons and other creditors, debtors and persons having business relations with the bank in the hands of a commissioner. It is no rational classification to say that one class consists of Federal Reserve banks as distinguished from State banks or individuals. They are all creditors or debtors or otherwise interested in the same way. Nor is it any rational classification to say that Federal Reserve boards and State clearing houses represent persons interested in banks in the hands of the Commissioner as distinguished from other representatives of persons interested in the bank. There being no reasonable distinction in the character of business of the corporations enjoying this privilege, the law is unconstitutional.

It may be said that, since the point here is whether the circuit court has power to compel the production of records, the statute can apply to a case where a Federal Reserve Bank is litigant as well as to the parties to this suit. The rational interpretation of the statute, as the Legislature intended it, makes it mean that if the Federal Reserve Bank had access to the records of the Bank Commissioner, it would have had the right through the instrumentality of the court to compel their production in a civil case. The discrimination inheres which permits the Federal Reserve banks to obtain information possessed by the Bank Commissioner, and denies to plaintiff that information, either on personal request or through the instrumentality of the court's process.

It will be noted that in this case the Bank Commissioner was not only in possession of the reports of his examiners, but in possession of the reports made to his department by the Novinger Bank. It was a record of the bank dealings which was not accessible to the plaintiff except through the Commissioner of Finance. No matter how pertinent to his case and necessary to its solution, he could not get that record unless the Commissioner was compelled to produce it or to permit its production.

III. It is also argued that the statute is in conflict with Section 10, Article II, of the Constitution of Missouri, which is as follows:

"The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay."

We may say that the provision of the act which prevents the court in a civil case from procuring evidence, in the conduct of the trial, is an unwarranted interference with the functions of the court. A leading case on this subject is Brown v. Circuit Judge of Kalamazoo County, 5 L. R. A. (Mich.) 226, l. c. 230, where it is said: "It is within the power of a Legislature to change the formalities of local procedure, but it is not competent to make such changes as to impair the enforcement of rights."

If a litigant in a civil case is forbidden by statute to obtain evidence, otherwise available, then the power of the court to enforce his rights is impaired, and a "certain remedy" is not "afforded."

This is not an attempt by the Legislature to enact a rule of evidence, nor to define the effect of a certain character of evidence in making out a prima-facie case. It is an attempt to say the courts shall not have or use certain evidence, however pertinent or necessary for the proper determination of a case. It is an unconstitutional encroachment upon the proper functions of the courts. [10 R. C. L. pp. 863-867.] It is easy to see how the exact relation of a creditor or a debtor of a bank to other parties to his suit may be

proven by the records of the bank in the hands of the commissioner, and how it may be vital to the pursuit of his remedy that such records be produced in evidence.  As suggested in the Millspaugh case, there is no reason why such evidence may be available in a criminal case and not available in a civil case.  The only theory upon which the commissioner can be restrained from divulging what he learns in his examination of banks, and from producing in court the records in his custody, is on the ground of public policy; that some public interest may be adversely affected by the revelations which would ensue.  We are unable to conceive of any reason why general knowledge of the affairs of a defunct bank discovered in a trial in court, would injuriously affect the public morals, public health or public safety.  What public interest can be served by concealing the methods by which banks are guided to destruction by those entrusted with their control?  Ordinarily we would say the public is entitled to know all about the inside jobs which cause banks to fail, because through such knowledge the people's representatives may apply a remedy for the conditions revealed.  So far as appears on the surface the only persons served by concealment of such condition would be those concerned in bringing it about.

Since no reason appears anywhere for depriving the courts of the power to produce evidence necessary in a litigated case, we think the Legislature, in that part of the act which forbids the production of the evidence desired went beyond its constitutional authority.

The prisoner is therefore remanded.  All concur.