ORVILLE CARSON, a Minor, v. L. W. BALDWIN and GUY A. THOMPSON, Trustees of the Missouri Pacific Railroad Company, a Corporation, Appellants.—144 S. W. (2d) 134.

Division One, October 31, 1940.

*Thos. J. Cole, H. E. Sheppard, L. J. Bishop* and *D. C. Chastain* for appellants; *Patterson, Chastain, Graves & Smith* of counsel.

986

*James A. De Armond* and *Frank W. Long* for respondent.

DOUGLAS, J.—This is an action for damages for personal injuries. The plaintiff was riding at night as a guest in an automobile along a street in Rich Hill. The driver of the automobile suddenly discovering the street was blocked by a flat car in one of defendant's trains turned sharply to avoid a collision and the automobile upset causing plaintiff's injuries. Plaintiff based his petition both on negligence for blocking the street without providing a warning and on the violation of the statute for the unlawful blocking of the street. To support the latter charge he alleged that Rich Hill is a city of less than 10,000 inhabitants and that the flat car blocked the public street for more than five minutes. However, in submitting his case to the jury in his main instruction he first submitted the abstract statement of law that if, under the conditions of the statute, which were set out, the flat car blocked the street for more than five minutes such act was unlawful. Then the instruction proceeded to submit the facts of the blocking of the street by the flat car, the conditions present as to the crossing, the lack of warning and authorized the jury to find if the defendant was negligent in not giving a warning it could find for the plaintiff. The jury returned a verdict for $1,000 in his favor.

Appellant has properly challenged the constitutionality of the blocking statute, thereby giving this court jurisdiction. Section 4830, R. S. 1929, Mo. Stat. Ann., p. 2200, makes it a misdemeanor for a railroad to block any public crossing for more than five minutes anywhere in the state except in cities and towns of more than 10,000 inhabitants. No provision is made for the latter. Otherwise the statute is of state-wide application.

The common law condemns as a public nuisance any unauthorized or unreasonable obstruction of a highway which necessarily impedes or incommodes its use by the travelling public. It made indictable such a disturbance of the public convenience or safety. [State v. Campbell, 80 Mo. App. 110.] And so a railroad was subject to indictment at common law if it permitted a train of cars to obstruct

a highway for an unreasonable length of time. [Southern Ry. Co. v. State, 141 Tenn. 133, 207 S. W. 724.] "The accommodation of public travel, for which the ways have been provided and are maintained, requires that at grade crossings travelers shall not be subjected to prolonged delays arising from their occupancy by the cars or engines of a railroad company." [Com. of Mass. v. N. Y. C. & H. Railroad Co., 202 Mass. 394, 88 N. E. 764, 23 L. R. A. (N. S.) 350.]

█ It has been held that a Missouri Statute providing punishment for anyone obstructing a road in a specific manner created no new offense but merely enlarged an offense at common law. [State v. Turner, 21 Mo. App. 324.] The statute under consideration attempts to do the same thing. It has set a limit on the length of time, five minutes, a railroad company may lawfully obstruct a highway, and has made it a crime to exceed that period. The propriety of this part of the statute is not questioned. It is that provision which limits the application of the act to all parts of the State including cities and towns up to 10,000 inhabitants and in effect excludes larger cities, that is challenged as being a special law and contrary to Section 53 of Article IV of the Constitution.

By following the rule of favorable construction in upholding this statute we would be required to find it is based on reasonable and just considerations in making the same act a crime in some parts of the State and not in others of different population. We cannot do so. We find no purpose which is reasonable or just for exempting from the statute cities of over 10,000 inhabitants. Such classification is purely arbitrary. In fact communities of denser population where, for that very reason, travel is heavier and traffic more complex have even a greater demand that its streets and highways be kept open and unobstructed. The heavier the traffic, the greater the need that it be mobile and not subject to long interruption and interference. Where germane to the general purpose of the act, population is a proper basis for classification but in this case those localities which most properly might have been included within the terms of the act, are the very ones which have been left out. There is no real distinction with reference to the purpose of the act between those localities included and those excluded. The statute therefore comes under the constitutional ban of special legislation and is void. [See Ex parte French, 315 Mo. 75, 285 S. W. 513.]

█ There is even a stronger reason why this statute is void. It is criminal statute. It offends the rule fixed by a line of cases which declares that under our Constitution the Legislature may not enact a law making the same act a crime if committed in one locality and not punishable if committed in another. We found in State v. Gregori, 318 Mo. 998, 2 S. W. (2d) 747, that a difference in population should not make an act a criminal offense in one place and not in another. In State v. Walsh, 136 Mo. 400, 37 S. W. 1112, it was

held that a law which made it a crime to bet on a horse race any place except within the enclosure of a regular race course violated Section 53, Article IV of the Constitution. This decision was approved in State v. Thomas, 138 Mo. 95, 39 S. W. 481, and was properly distinguished in State v. Thompson, 160 Mo. 333, 60 S. W. 1077, 54 L. R. A. 950, which although it upheld a similar statute did so on a different theory because that statute was different to the extent that it included a licensing feature. We have also held that under our Constitution it is not permissible to punish the same offense or violation of some public or general law by one species of punishment in one locality and by a different or more severe punishment in another locality. [State v. Buchardt, 144 Mo. 83, 46 S. W. 150. See also State ex rel. Miller v. O'Malley, 342 Mo. 641, 117 S. W. (2d) 319.]

There are cases in this State where criminal statutes applicable only to a specified class of persons have been upheld where the classification was reasonable, followed natural lines and included all persons within the class. [State v. Gregory, 170 Mo. 598, 71 S. W. 170; State v. Gritzner, 134 Mo. 512, 36 S. W. 39.] For the reasons already stated and the facts here involved the ruling of these cases is not apposite here.

█ It follows since the statute is unconstitutional it was a misstatement to tell the jury that if the train blocked the crossing for more than five minutes such act was *unlawful*. It is true that the violation of the statute was not submitted to the jury as the proximate cause of the injury. Had this been done it would have been error in view of the illegality of the statute. Whether the violation of a lawful statute under these circumstances may be advanced as the proximate cause of the injury presents a dispute in which we need not join. It is also true that an instruction which contains an abstract statement of law, correctly stated, though it makes the instruction erroneous, will not form the basis for reversal. [McGrew v. Mo. Pac. Ry. Co., 109 Mo. 582, 19 S. W. 53.] But an instruction which incorrectly states the law is obviously ground for reversal. Otherwise, plaintiff's instruction is not subject to the attacks made upon it. On retrial, it may be drawn in a form which will avoid any objection.

█ Appellant makes the further contention that the court erred in submitting the case to the jury because there were no special conditions or circumstances peculiar to the crossing which made it so unusually hazardous as to require the maintenance of a watchman or warning light. It is not denied that there was no warning of any kind of the presence of the car except the car itself. Where special conditions create unusual hazards at a crossing some warning to travelers of the approach or presence of a train at the crossing may be required in the exercise of ordinary care. This is so for the reason a train may not be seen in time to prevent a collision because of such peculiar conditions. [Poehler v. Lonsdale (Mo. App.), 129 S.

990

W. (2d) 59; Elliott v. Mo. Pac. Railroad Co., 227 Mo. App. 225, 52 S. W. (2d) 448; Roshel v. Litchfield & M. Ry. Co. (Mo. App.), 112 S. W. (2d) 876; Homan v. Mo. Pac. Ry. Co., 334 Mo. 61, 64 S. W. (2d) 617; Toeneboehn v. St. L. & S. F. Ry. Co., 317 Mo. 1096, 298 S. W. 795.] Testimony in behalf of plaintiff shows that the flat car which blocked the street saddled it squarely so that only the narrow edge of the platform of the car would be visible to persons coming along the street; the car was not in motion, but was at rest and silent; the crossing was unlighted on the side plaintiff was approaching; a box car standing on an adjoining track also blocked the view; the street was a heavily traveled one in Rich Hill; the surface of the street inclined down to the tracks which tilted the beam of the headlights away from the edge of the platform of the car; a light fog or mist reduced visibility to a slight degree. Under these circumstances we believe the trial court properly submitted the case to the jury.

The plaintiff was obliged to exercise only ordinary care for his own safety. The decision in Fitzpatrick v. The Kansas City So. Ry. Co., 347 Mo. 57, 146 S. W. (2d) 560, by DALTON, C., considered contemporaneously herewith, involving somewhat similar facts is not pertinent. That decision turns on the contributory negligence, as a matter of law, of the *driver* of the automobile who was obliged to exercise the highest degree of care.

Because of the conclusions above stated the judgment is reversed and the cause remanded for retrial. All concur.