**Richard Lee HOUGHTON, Respondent,**

v.

**ATCHISON, TOPEKA & SANTA FE RAIL-ROAD COMPANY, a Corpora-tion, Appellant.**

No. 53049.

Supreme Court of Missouri,
En Banc.

Oct. 27, 1969.

Thaine Q. Blumer, Kansas City, Blumer, Wright, Bittiker & Rocha, Kansas City, of counsel, for plaintiff-respondent.

George L. Gordon, Sam D. Parker, Jack W. R. Headley, Joseph E. Stevens, Jr., Kansas City, Lathrop, Righter, Gordon & Parker, Kansas City, of counsel, for defendant-appellant.

DONNELLY, Judge.

In this jury-tried action for damages resulting from an automobile-train collision in Clay County, Missouri, plaintiff received a verdict in the amount of $50,000. Defendant appeals.

The collision occurred where defendant's railroad track crosses Route D near Lawson, Missouri. Route D extends east and west. The track extends northwest and southeast and intersects the highway at a rather severe angle. The highway is two-lane blacktop and is straight and level west of the crossing.

The collision in controversy occurred at approximately 9:00 P.M., October 26, 1965. Plaintiff was driving a 1953 Chevrolet automobile with brakes and lights in good condition. Defendant's train consisted of two diesel engines, nine freight cars, and a combination passenger-baggage car on the rear.

Prior to the collision in controversy, as the train was approaching the crossing from the northwest, a westbound automobile came to the crossing and was turned by its operator into the ditch north of the highway and northeast of the track with its left rear protruding onto the track. The left rear of the automobile was struck by the front engine of the train. The train stopped with the two engines blocking the highway. The two engines were uncoupled from the balance of the train and the two engines were moved southeast of the crossing, leaving the freight cars and combination car northwest of the crossing and the highway clear. At this time, the conductor and rear brakeman flagged highway traffic at the crossing, one west of the crossing and one east of the crossing. After four or five minutes the engines backed across the crossing and coupled onto the freight cars and combination car. Three or four automobiles stopped east of the crossing. The conductor, who was flagging west of the crossing, boarded the engine, instructed the engineer to proceed to the southeast, and returned to the ground east of the crossing. The train started forward. The conductor and rear brakeman boarded the train from the east side of the rear car of the train as it left the crossing. From the time the train started forward there was nobody flagging traffic on the west side of the crossing.

In the meantime, plaintiff, not knowing of the above occurrences, was approaching the crossing from the west. He was following an automobile operated by Flack Helm of Lawson, Missouri, in an easterly direction. When Flack Helm, "going about 35 to 40 miles an hour," "got pretty close to the railroad [he] happened to see an object moving." He "seen then what it was," "put on" the right-hand directional signal, "put on the brake," pulled to the south shoulder of the highway, and stopped.

Plaintiff testified as follows:

"Q. As you were going east on 'D' you then were behind Mr. Helm's car?
A. That is right.

Q. Can you tell us your best estimate or judgment about what distance you were behind his car as you

drove along there before the accident happened?

A. To the best of my knowledge I would say probably 70 feet behind him or so.

Q. Do you know what his speed was and what yours was?

A. Well, the last time I looked at my speedometer I was sitting right on just about 40 miles an hour, between 35 and 40.

Q. Between 35 and 40? A. Yes.

Q. All right. Now, as you approached this railroad crossing—oh, can you tell us what was the condition of the road at that time? A. The road was dry.

Q. And the weather? A. It was a dark night but no moisture whatsoever, the weather was okay then.

Q. The weather was okay? A. Right.

Q. All right. Then what, if anything, did you notice about Mr. Helm's car as you drove along there following him just before the accident occurred?

A. He was driving all right as far as I could tell.

Q. What part of the highway was he in and what part of the highway were you in?

A. We both were in the south lane going east.

Q. That would be this lane here then, is that correct?

A. That is right, sir.

Q. Going this direction along in here?

A. Yes, sir.

Q. Then what happened? Tell us what took place.

A. Well, as we was traveling east all of a sudden I just seen the red lights on his car come on.

Q. You are talking about the taillight now?

A. Yes, sir. And he just turned to the right real fast and I just kind of pulled to the left and just went on around him. I don't remember seeing anything after his brake light come on.

Q. Do you have any memory what happened at all after the time that you started around Mr. Helm's car?

A. I have none whatsoever."

Plaintiff's automobile struck the right rear of the rear car of defendant's train as it was leaving the crossing at a speed of four or five miles per hour. Plaintiff's automobile came to rest at the crossing in the middle of the eastbound lane of the highway.

Defendant contends the trial court erred in overruling its motion for a directed verdict at the close of all the evidence. It asserts that there was no evidence that it was negligent.

In State ex rel. Thompson v. Cave, 358 Mo. 414, 417, 418, 215 S.W.2d 435, 436, this Court, en Banc, said:

"In this jurisdiction it is established law that a railroad is not guilty of negligence in blocking a public road crossing without providing warnings or signals, unless there are special circumstances which make the crossing peculiarly hazardous, and the burden is on one seeking damages to prove such special circumstances. * * *"

Plaintiff contends that "defendant's crossing of the train across the highway created an unusually dangerous and hazardous crossing for public use, which was either known to defendant, or should have been known, and that defendant was thereby negligent in failing to warn plaintiff." We must determine whether a submissible case was made against defendant on the grounds asserted by plaintiff.

"* * * In determining that question we consider the evidence in the

light most favorable to those contentions, accepting as true all that is not entirely unreasonable or contrary to physical facts or natural laws and giving to plaintiff the benefit of all favorable inferences that reasonably may be drawn from such evidence. * * * But, of course, the case is not to be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. Neither may any fact essential to submissibility be inferred in the absence of substantial evidentiary basis. In other words, liability cannot rest upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence. * * * The question of whether the evidence in a given case is substantial is one of law for the court. * * *" Probst v. Seyer, Mo. Sup., 353 S.W.2d 798, 802, 91 A.L.R.2d 1252.

Plaintiff's position is stated as follows:

"The evidence in this case which created a jury issue as to whether or not 'under the circumstances and conditions shown by the evidence, the crossing of defendant's train across the highway created an unusually dangerous and hazardous crossing for public use' of which 'defendant knew or should have known' and of which 'defendant failed to use ordinary care to warn' is that the crossing was in an urban area. The outskirts of a town of 700 people when there were numerous houses and some places of business and over a highway heavily travelled by automobiles from several other towns and an Army base, which road was the main artery to U. S. Highway 69 and which had sufficient traffic at the time of plaintiff's collision so that at least five automobiles were at the accident scene during the three-minute period immediately preceding the collision. In addition, the train was moving without lights on the rear car and had been stopped at the crossing some ten minutes because of another accident. While stopped and while recoupling the engine to the train, the crewmen acted as flagmen to stop automobiles moving over the highway and at that time had flagmen on each side of the tracks. When the train started forward the crewman acting as flagman on the west side of the tracks (from which side plaintiff was approaching the train) moved to the east side where a flagman stopped at least three cars moving westbound while the train moved across the highway. The physical construction of the crossing was that the highway ran east and west with the railroad tracks crossing at a severe angle from northwest to southeast. The train travelled 96 feet in crossing a 22 foot highway but there were no mechanical signals at the crossing and no crossbuck facing eastbound traffic."

Plaintiff cites Jenkins v. Wabash R. Co., Mo.Sup., 322 S.W.2d 788; Coffman v. St. Louis-San Francisco Ry. Co., Mo.Sup., 378 S.W.2d 583; and Carson v. Baldwin, 346 Mo. 984, 144 S.W.2d 134. These cases do not assist our determination of the issues in this case. The collision of an automobile with the side of a moving train was not involved in either the Jenkins case or the Coffman case. In both cases the leading diesel unit of the train struck the right rear of the automobile. The following conditions, present in the Carson case, are not present in this case: (1) only the narrow edge of the platform of a flatcar was visible to persons coming along the street; (2) the train was not in motion; (3) a boxcar standing on an adjoining track blocked the view; (4) the surface of the street was not level with the crossing; and (5) a light fog or mist reduced visibility to a slight degree.

In Dimond v. Terminal R. R. Ass'n of St. Louis, 346 Mo. 333, 348, 141 S.W.2d 789, 796, a case involving a collision of an automobile with the side of a moving train, this Court said:

"Whether or not there was any evidence of negligence on appellant's part, in failing to provide additional warnings, depends upon the facts and circumstances shown by the record with reference to the particular crossing. A railroad is not required to have

a gate or flagman or brakeman, or to maintain signals and lights at every crossing of a highway, but only at such places as may be regarded as reasonably necessary for the protection of travelers. What might be considered as reasonably necessary for such protection at one crossing might be deemed wholly needless and unnecessary at another, in each case depending upon the amount of travel upon the highway, the frequency with which trains passed over it, upon the view which could be obtained of trains as they approached the crossing, or moved over it, and upon other conditions. Whether an issue of fact is made for the jury depends on the evidence in the particular case. * * *"

■ There is evidence that the highway was sometimes heavily traveled, that the train was an unscheduled train, that it infrequently passed over the crossing, and that the railroad track intersected the highway at a severe angle. However, the crossing was level with the highway. The highway was straight and level west of the crossing. There was nothing to block or obstruct an eastbound motorist's view of a train passing over the crossing. We do not believe that the general conditions prevailing at the crossing were so unusually dangerous that the railroad should have anticipated that the mere presence of the train moving across the crossing would not adequately warn a motorist approaching from the west on the highway.

Plaintiff contends, however, that "of great importance to the issue of whether there was danger at this crossing of an unusually hazardous nature is the appreciation of this unusual danger by the crew of this train" as evidenced by the fact that they flagged the crossing until the train started forward to leave the crossing.

■ A fatal weakness in plaintiff's position is that there is no evidence from which it may be found that plaintiff was cognizant of, or relied upon, prior flagging on the part of the train crew, as was true, for example, in Montgomery v. Mo. Pac.

R. R. Co., 181 Mo. 477, 79 S.W. 930. The evidence is uncontroverted that plaintiff's automobile was at least 2999 feet west of the crossing when the train started forward to leave the crossing and the flagging ceased. It necessarily follows that, as plaintiff approached the crossing, the train was moving across the crossing. The prior collision and prior flagging are not relevant to a consideration of the duty to warn urged by plaintiff.

■ When the prior collision and prior flagging are eliminated from consideration, the essential question in this particular fact situation is narrowed to whether the severe angle at which the railroad track intersected the highway rendered the crossing peculiarly hazardous. We decline to so hold. The highway was straight and level. We believe the conditions were such that the railroad could assume that the occupation of the crossing by the cars of its train would be visible to a motorist in time to allow him to stop before reaching the crossing. This being true, the railroad was not required to give additional warnings and plaintiff failed to make a submissible case.

The case is reversed and remanded with direction to enter judgment for defendant.

Reversed and remanded with directions.

HENLEY, C. J., FINCH, DONNELLY, and STORCKMAN, JJ., concur.

MORGAN, J., dissents in separate dissenting opinion filed.

SEILER and HOLMAN, JJ., dissent and concur in separate dissenting opinion of MORGAN, J.

MORGAN, Judge (dissenting).

I respectfully dissent—not because of the rules of law pronounced in the majority

opinion, but because of the manner in which such rules have been applied to the facts of this particular case.

From the multitude of cases pertaining to railroad crossing accidents, Mo.Dig., Railroads, Vols. 24 and 24A, it is well established:

(1) That blocking of an ordinary public road crossing by the railroad, standing alone, is not an act of negligence, and there is no duty to warn the traveling public other than the mere presence of the train.

(2) That special circumstances may exist which create additional changes that make the crossing peculiarly hazardous, and in such instances there is a resulting duty to warn the traveling public by such warnings as flagging or mechanical signals.

(3) That a peculiarly hazardous crossing may flow from special circumstances that are temporary in nature as well as from those that are fixed and permanent.

(4) That where such special circumstances are permanent, knowledge of their existence by the railroad is generally presumed; but where such special circumstances are temporary or created suddenly by the particular use being made of the crossing, it is incumbent there be proof that the railroad had knowledge, or should have had, that a peculiarly hazardous crossing existed at that moment.

(5) That after it is determined that a crossing is peculiarly hazardous, whether permanent or temporary, there remains only one question—did the railroad use ordinary care to provide a sufficient warning to the traveling public?

In determining whether the crossing was or was not peculiarly hazardous on the night of this accident, the majority opinion, as it states, limited its consideration to only one fact, i. e., "whether the severe angle at which the railroad track intersected the highway rendered the crossing peculiarly hazardous." In fairness to the evidence, as reflected in the record, the following significant facts should have been considered:

(a) The severe angle at which the tracks crossed the highway required the train to travel 96 feet to cross the 22 foot roadway. At this angle, the rear of the train was practically traveling along plaintiff's lane of travel as any truck or motor vehicle might. This fact denies the logic of the contention that "mere presence of the train," standing alone, was a sufficient warning, as that reasoning is only justified where one had a view of what, in fact, looked like a train.

(b) There were no lights on the rear of the train.

(c) It was an unscheduled train.

(d) The speed of the train was only 4 or 5 miles per hour; a fact made important, only because of the extreme angle of the crossing and the absence of lights.

(e) The appreciation by the train crew that the prior wreck, uncoupling and coupling the train, had created, at least temporarily, a peculiarly hazardous crossing calling for additional warnings. This fact is brushed aside in the majority opinion by virtue of there being no evidence plaintiff had relied on this additional warning. With this statement there can be no argument, however, that same evidence was available on the vital and controlling issue in the case as to whether or not a peculiarly hazardous crossing existed. The experienced employees of the railroad undoubtedly thought it did.

(f) The crew had stopped cars approaching from the east. It would not be unreasonable to charge it with knowing that as soon as this lane of travel was clear, such cars would proceed west and temporarily blind plaintiff from seeing the unlighted rear of the train as it slowly traveled along plaintiff's lane of travel.

(g) The usual cross-buck signs were missing.

(h) One flagman had been on the west side (the side from which plaintiff approached) and one was flagging on the east side. At a time prior to departure, the flagman on the west went to the east side, regardless of the fact the crew saw cars approaching from the west and which a jury could reasonably find included plaintiff's car. Even though the abandonment of this assumed task might not be relevant to the original question as to the proper classification of the crossing, it is highly significant on whether or not the warning as given met the demands of due care.

Obviously, the evidence could sustain a finding defendant knew of the existing conditions and that its abortive effort to warn was indicative of a failure to use ordinary care under the existing circumstances. On the contested issue, reasonable minds could differ as to whether this crossing, perhaps ordinarily not extra dangerous or peculiarly hazardous, was made so by defendant's use of it under the conditions there existing. Clearly a jury issue was created and it has been resolved by its verdict for plaintiff.

This dissent has not been extended by quotations or citations of authority as each summarized version of the existing law on the subject is consistent with the precedents cited in the majority opinion.

I would hold that plaintiff made a submissible case on the issue of defendant's negligence.