**STATE of Missouri, Respondent,**

v.

**Michael Ray DAVIS, Appellant.**

No. 71596.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1989.

Deborah J. Tomich (submitted on brief), St. Charles, for appellant.

Carolyn M.C. Komyati, Asst. Pros. Atty., St. Charles, for respondent.

BILLINGS, Justice.

Defendant Michael Ray Davis was convicted of driving while his license was suspended, in violation of § *302.321, RSMo 1986.* He was sentenced to serve two days in the county jail, with work release. At the close of the state's evidence, defendant moved for a judgment of acquittal. The trial court overruled the motion and defendant appealed to the Missouri Court of Appeals, Eastern District. Because one of the questions challenges the validity of the statute, the court of appeals transferred the case to this Court. Affirmed.

*Section 302.321* provides that an individual who drives a motor vehicle while his license is suspended is guilty of a class A misdemeanor. Further, § *302.321* states:

No court shall suspend the imposition of sentence as to such a person nor sentence such a person to pay a fine in lieu of a term of imprisonment, nor shall such person be eligible for parole or probation until he has served a minimum of forty-eight consecutive hours of imprisonment, unless as a condition of such parole or probation, such person performs at least ten days involving at least forty hours of community service under the supervision of the court in those jurisdictions which have a recognized program for community service.

Defendant contends that § *302.321* is unconstitutional because it violates due process of law and equal protection. The statute requires that those individuals who are convicted of driving while their license is suspended be sentenced to at least forty-eight hours imprisonment unless the jurisdiction has a qualifying community service program. If the jurisdiction has such a program, the court has the discretion to sentence defendants to community service. Defendant argues that this is in violation of equal protection because it establishes different penalties for different individuals,

depending upon where the defendant was convicted.

Defendant relies primarily on two cases, *City of Charleston v. McCutcheon,* 360 Mo. 157, 227 S.W.2d 736 (Mo. banc 1950), and *Carson v. Baldwin,* 346 Mo. 984, 144 S.W.2d 134 (1940). In *City of Charleston,* a statute allowed penalties for the violation of a statute regulating the width of aisles in amusement places to be assessed only if there was a court of competent jurisdiction in the town, city, or village where the offense occurred. This Court held the statute to be unconstitutional as there was no reasonable basis to differentiate between a city in which there was a court of competent jurisdiction and a city in which there was not such a court.

In *Carson,* this Court invalidated a law making it a misdemeanor for a train to block a public crossing for more than five minutes in towns having a population of 10,000 or less. The Court noted the fact that traffic in the cities excluded from the act would be more adversely affected than traffic in those cities included. Finding no reasonable basis for the distinction between the two types of cities, the Court held the statute to be unconstitutional.

Defendant cites no authority for the proposition that all statutes must always treat every class of individuals exactly equally. Instead, what must be found is that there is a rational basis for any difference in treatment. *Hodel v. Indiana,* 452 U.S. 314, 331–33, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981); *Collector of Revenue v. Parcels of Land, etc.,* 517 S.W.2d 49, 54 (Mo.1974).

There is a long line of cases in which this Court has held statutes constitutional that have different impacts on different areas of the state. In *Collector of Revenue v. Parcels of Land, etc.,* 517 S.W.2d 49 (Mo. 1974), this Court held that a statute that only applied to cities not within a county, which limited its effect to the City of St. Louis, did not violate equal protection, as there was shown to be a rational basis for the difference in treatment.

Similarly, in *Pollard v. Board of Police Commissioners,* 665 S.W.2d 333 (Mo. banc 1984), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985), this Court upheld a statute that prohibited employees of the Kansas City police department from making political contributions. Pointing to the history of political corruption in the Kansas City police department, the Court held that there was a rational basis for the General Assembly's action.

In this case, there is a rational basis for the General Assembly distinguishing between jurisdictions in which there is a recognized program for community service and those that do not have such a program. It is reasonable for the General Assembly to determine that in giving the trial court the discretion to sentence a defendant to community service in lieu of imprisonment, it is necessary to require the jurisdiction to have a recognized community service program. Allowing defendants to be sentenced to community service in jurisdictions that do not have a recognized program could reasonably be seen as counter productive to the goal of the statute, to adequately punish individuals convicted of driving with a suspended driver's license.

■ Defendant also raises the issue of the sufficiency of the evidence as to whether he was driving and as to whether he had the required mental state.

In determining if there was sufficient evidence in a criminal case, the Court accepts as true all evidence in the record tending to prove the defendant's guilt, together with all reasonable inferences that can be drawn therefrom. *State v. Strickland,* 609 S.W.2d 392, 395 (Mo. banc.1980). The test is whether the evidence, so viewed, is such that a rational trier of fact could have found beyond a reasonable doubt that defendant was guilty. *State v. Bonuchi,* 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983).

There is ample evidence in the record to support the finding that defendant was driving the vehicle. The arresting officer testified as follows:

Q. So, he [the defendant] didn't give any explanation why he was driving—

A. If he did, I don't recall the exact conversation.

Q. Or while—or why he was—did you inform him that he was driving—

A. Yes. I believe I notified him that the information indicated that he was currently listed under suspension and that he would be issued a summons for such.

As to the mental state, § 302.321 does not, on its face, require a culpable mental state, nor has this Court held that one is required. It is not necessary for the Court to address this issue because the defendant admitted that he had surrendered his driver's license in October of 1986 and had never attempted to regain his driving privileges.

Judgment affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., and MAUS, Special Judge, concur.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.