## IN RE FRANK C. MILLSPAUGH, Petitioner.

In Banc, March 12, 1925.

1. **COMMISSIONER OF FINANCE: Testimony in Civil Case.** The statute (Sec. 11679, Laws 1923, p. 222) declaring that the Commissioner of Finance shall be bound, under oath, to keep secret all facts and information obtained in the course of all examinations of banks "except when he is called as a witness in any criminal proceedings or trial in a court of justice" applies to civil cases as well as criminal proceedings; and in the trial of a civil action between a bank and a private citizen the Commissioner may be compelled, by *subpoena duces tecum*, to produce in court as evidence official records containing pertinent facts and information obtained by him in the course of official investigation and examinations of said bank.

2. ———: ———: Lack of Comma: Word ''Or'': Intent of Lawmakers.
The intent of the Act of 1923 (Laws 1923, p. 222) forbidding the
Commissioner of Finance to divulge any information relating to a
bank obtained by him in the course of an official examination "ex-
cept when he is called as a witness in any criminal proceedings or
trial in a court of justice" is not to be determined by the absence
of a comma after the word "proceedings" or by a consideration of
the word "or," but the phrase being of doubtful or dubious mean-
ing the court will make use of extraneous matter for the purpose of
ascertaining what was the real intent of the lawmaker. And a re-
view of the historical development of the statute, its wording when
first enacted in 1907, and its long and harmonious construction by
bench and bar, make it plain that it never was the intention of
the Legislature by the use of these words to preclude the use of
such facts as the Commissioner might obtain in an official examina-
tion, in the trial of a civil action between a bank thus examined
and a private citizen.

Citations to Headnotes: 1, Witnesses, 40 Cyc. 2391; 2, Statutes, 36 Cyc.
1117, 1136, 1138, 1143.

## Habeas Corpus.

WRIT DENIED AND PETITIONER REMANDED.

*Robert W. Otto,* Attorney-General, and *George W. Crowder,* Assistant Attorney-General, for petitioner.

*Scott J. Miller* for respondent.

GRAVES, C. J.—*Habeas Corpus:* Upon applica-
tion our writ was awarded, and return thereto was duly
made, and the cause heard in February, 1925, and sub-
mitted for opinion. The statement of the Attorney-Gen-
eral fairly states the case. Mr. Millspaugh was evi-
dently desirous of having this court construe a statute,
and raises no question as to the fact that his evidence,
and his books and records, might not prove valuable to
the defendant, as indorser, upon a note in suit. The state-
ment of the Attorney-General is as follows:

"In this case there is no dispute or controversy as to the facts, hence not necessary to make any statement, more than to say that on the 11th day of December, 1924, a civil action or suit was pending, and for trial, in the Circuit Court of Mercer County, Missouri, in which case 'The Farmers Bank' was plaintiff and F. A. and L. E. Lambert were defendants. The defendants caused a *subpoena duces tecum* to be issued and served upon this petitioner, commanding that he bring with him and produce as evidence in court certain records then in the office of the Commissioner of Finance, which said records contained facts and information previously obtained by this petitioner through his official investigations and examinations as Commissioner of Finance of the plaintiff bank.

"Petitioner obeyed the subpoena to the extent of appearing before the court on the 11th day of December, 1924, but declined to take with him the records called for, and refused to make any disclosures of the facts and information therein contained on the ground that if he made such disclosures he would be in violation of a criminal statute of the State of Missouri, to-wit, Section 11679 of an act of the General Assembly of 1923 (Laws 1923, page 222). The circuit court took the view that petitioner was bound to testify in said cause, even though it be a civil suit, and to make the disclosures called for by said *subpoena duces tecum,* and because petitioner refused the court adjudged him in contempt and sentenced him to the county jail of Mercer County, there to remain until petitioner purged himself of such contempt by consenting to so testify. Thereupon petitioner sued out his writ of *habeas corpus* in this court.

"Petitioner's right to discharge under this writ depends upon the construction to be given Section 11679 of the Act of 1923, found in Laws of 1923 at page 222, and particularly upon the meaning of the language *"criminal proceedings or trial in a court of justice"* found in said section.

"It is the contention of petitioner that the above language limits the right of the Commissioner of Finance to make disclosures of facts and information obtained by him in course of his official duties in criminal proceedings only, which, under the accepted definition of the term "proceedings," would include not only the trial of a criminal cause in a court of justice, but also any proceedings before a grand jury, or before a justice of the peace in a preliminary hearing in a criminal cause, or any proceeding of a criminal nature."

I. Petitioner is the Commissioner of Finance of this State. Due return was made on our writ by the sheriff who held petitioner in restraint, as stated in said return. The return also set out the facts surrounding the judgment of contempt, as well as the judgment itself, and also the *subpoena duces tecum,* under which petitioner appeared in court, but being placed upon the witness stand refused to testify or produce his books. In his reply to the return it is said:

"Petitioner further states that as such Commissioner of Finance he acquired and obtained facts and information, in the course of his official investigations and examinations of and concerning the affairs and conditions of the banks named in said *subpoena duces tecum,* particularly 'The Farmers Bank,' which is named as the plaintiff in the suit mentioned in respondent's return, and in which suit said *subpoena duces tecum* was issued; that such facts and information were contained within the records called for by said *subpoena duces tecum.*"

The petitioner does not challenge the sufficiency of the judgment of contempt in the case, as pronounced against him, except that under the statute named he was precluded from testifying in a civil case, under the pains and penalties of a fine, and the forfeiture of his office. The judgment of contempt is, as he contends, without support under the law, and being against the statutory provision is void, and that he is entitled to be discharged upon *habeas corpus.* Counsel for the defendants in the civil action have been permitted to file, and

have filed, suggestions in opposition. The whole controversy therefore is upon the construction of the statute mentioned, supra. Mr. Millspaugh has evidenced no personal interest in the matter, further than a disposition to protect himself and his office, under the statute. His frankness throughout the whole proceeding is to be commended.

II. The task of construing this statute is now at hand. The trial court held that the statute, or rather the exception in the statute, applied to civil as well as criminal cases. In 1923 the General Assembly enacted a new section, and repealed Section 11679, Revised Statutes 1919, said new section to be known as Section 11679. [Laws 1923, p. 222.] This new section reads:

"The bank commissioner, his deputies, clerk, stenographer, each examiner and every employee shall be bound, under oath, to keep secret all facts and information obtained in the course of all examinations, except so far as the public duty of such officer requires him to report upon or take special action regarding the affairs of any bank, private banker, savings and safe deposit company or trust company, and except when he is called as a witness in any criminal proceedings or trial in a court of justice. If any bank commissioner, deputy, clerk, stenographer or examiner shall disclose the name of any debtor of any bank, private banker, savings and safe deposit company or trust company, or anything relative to the private accounts, affairs or transactions of such bank, private banker, savings and safe deposit company or trust company, or shall disclose any facts obtained in the course of his or their examination of any such bank, private banker, savings and safe deposit company or trust company, except as herein provided, he shall be deemed guilty of a misdemeanor, and upon conviction thereof in a court of competent jurisdiction, be subject to a forfeiture of his office and the payment of a fine not less than one hundred dollars, nor more than one thousand dollars, provided, however, that the bank

In re Millspaugh.

commissioner, his deputies and each examiner may furnish to the Federal Reserve Board, the Federal Reserve banks, or to examiners duly appointed by the Federal Reserve Board, or the Federal Reserve banks, the Comptroller of the Currency of the United States, or to examiners duly appointed by him, the clearing houses in the State of Missouri and examiners duly appointed by them, copies of all examinations made, and may disclose to such Federal Reserve Board, Federal Reserve banks, Comptroller of the Currency, clearing houses, or examiners, any information with reference to the condition of affairs of state banks or trust companies organized under the laws of this State.''

The crux of this case is the construction to be given to the second exception, which reads: ''and except when he is called as a witness in any criminal proceedings or trial in a court of justice.''

The first paragraph (consisting of the first eight lines) of this new section is, in language and punctuation, exactly the same as Section 11679, Revised Statutes 1919. So that the portion of the new act which we are called upon to construe is but a re-enactment of the old law, and has therefore been upon the statutes a long time. At least we find this first paragraph of the new Section 11679 in practically the same language in Section 8 of Article XX, creating the State Banking Department, Laws of 1907, page 157. The second exception in the Act of 1923 (being the exception we are to construe in this case) is in the exact words and punctuation as it is in the Act of 1907, Laws 1907, Section 8, page 157. So that the language we are called upon to construe has been a part of our banking laws since the Act of 1907. It is singular, to say the least, that the question here raised has never been raised before. But with this history we proceed next to the construction.

III. The position of petitioner is well stated by the learned Assistant Attorney-General (in his suggestions, in this language:

"The language is broad enough to include any proceedings of a criminal nature, but not broad enough, as used in said section, to include proceedings of a civil nature, in that the word 'trial' only is used in the phrase, 'trial in a court of justice'. It will be noted that there is no punctuation of any kind following the word 'proceeding', so that the word 'criminal' may reasonably be taken as a modifier not only of 'proceedings' but of the word 'trial' as well. If the Legislature had intended to make this language inclusive of any and all proceedings in a court of justice, it could easily have said 'any judicial proceedings or trial in a court of justice' and need not have made use of the word 'criminal' at all."

He concedes further that the words "criminal proceedings" within themselves, and standing alone, are broad enough to cover all kinds of criminal proceedings, including a criminal trial in a court of justice, and cites the following authorities: Flanary v. Commonwealth, 75 S. E. (Va.) 289; Lindsay v. Allen, 82 S. W. (Tenn.) 648; Sherman v. Ry., 102 Pac. (Nev.) 257; John Deere Plow Co. v. Jones, 75 Pac. (Kan.) 1039; Reyburn v. Handlan, 165 Mo. App. 412, l. c. 418.

He practically concedes that if there were a comma as a punctuation mark between the words "criminal proceedings" and the words "or trial in a court of justice," then a civil action might be covered.

If the intent of the lawmakers is to be judged by the literal language, and the absence of a comma, the contention of the petitioner's learned counsel may have substance. But such contention has never had such construction by the bench and bar of the State. As said this language has been in the law since 1907, and up to this case the point raised in the instant case has never been raised. No doubt many civil cases in the course of these years have required evidence of the banking department. When such department was under the control of the Secretary of State the bank examiners were appointed by the Secretary of State, and were prohibited by law from giving the information they gathered, as to banking in-

stitutions, "to any one except the Secretary of State." [R. S. 1899, sec. 1308.] They were required to take the oath that they would not divulge it to any one except the Secretary of State, and by Section 1310, Revised Statutes 1899, it was provided that for "any violation of his oath of office or of any duty imposed upon him by this act, any examiner shall be deemed guilty of a felony." The punishment ran as high as five years' imprisonment in the penitentiary and forfeiture of office. Such officers were in greater danger than is the petitioner here, yet those of us who were in the practice, or upon the bench, at the time know that the bench and bar generally understood that such examiners could be compelled to testify in any case, criminal or civil. In fact they were called from circuit to circuit as occasion required for that purpose. In the law the only exception as to secrecy was the one granted to the Secretary of State. The exception in the present law, first appearing in 1907, supra, has been given a similar construction. This is borne out by the fact that the present case is the first appearing here urging a contrary view of the exception.

The intent of the lawmakers is always a vital question when the language of the law is dubious or doubtful. Why should the lawmakers look solely to the interest of the public, or the defending criminal, and leave out the valuable property interests of the citizens of the State? Why would they give the State, and the defendant in a criminal case, a key to unlock the secret information of a state department, and not give the citizen, whose *all* might be at stake in a civil case, the same key? The language of this exception might have been made much clearer, and the punctuation better, than it is, but we are impressed that the intent of the lawmakers was to make the exception cover both civil and criminal cases. It evidently has been so understood by both bench and bar, and the learned circuit judge in the case wherein came the contempt judgment so understood the law.

We deem it unnecessary to attempt a literary disquisition on the word "or" in the determination of the single question. Nor need we discuss the legal effect of the absent comma. The most that can be said is, that the situation leaves the language of the act dubious and doubtful, and we have the right to go to extraneous matter to determine the real intent of the lawmakers. [Sedalia ex rel. v. Smith, 206 Mo. l. c. 360 et seq.]

Taking the whole act of which this particular section forms a part, it must be concluded that the secrecy imposed was for the protection of banking interests and their patrons. This petitioner has in his possession books and papers belonging to a defunct bank, the assets of which were absorbed by the plaintiff bank in the circuit court case. The purpose of the law was not to hide legitimate evidence when the same is required by the courts in the disposition of even and exact justice as between litigants. We do not believe that it was the intent of the lawmakers, by the language used, to preclude the use of such facts as the Commissioner of Finance might possess in the disposition of justice in a court having on trial a civil case. We think the intent was to except both criminal proceedings and trials in the courts of civil actions, from the general bar of secrecy first imposed by the law.

It follows from this ruling, that the petitioner should be remanded to the custody of the Sheriff of Mercer County, until such time as he may indicate to that court his willingness to testify and produce books and papers called for in the *subpoena duces tecum*. The petitioner is accordingly remanded to the custody of the Sheriff of Mercer County, Missouri. All concur.