George A. Werner, as Administrator, etc., of Andrew Werner, Deceased, Respondent, v. Dean G. Crippen and Others, Appellants.

Fourth Department, October 2, 1935.

*Paul Folger* and *Harlan F. Calkins*, for the appellants.

*George J. Skivington*, for the respondent.

CROSBY, J.   The defendants were directors of the State Bank of Commerce of Brockport, N. Y.   On December 1, 1931, the plaintiff, as trustee for the estate of George A. Werner, deceased, deposited $9,808.04 in the bank.   On the evening of December 15, 1931, the directors, by resolution, requested the State Superintendent of Banks to take charge of the bank for the protection of depositors.   On the morning of December 16, 1931, the Superintendent took charge of the bank which has been in the process of liquidation since that time, and all depositors, including the plaintiff, have been paid fifty-five per cent of their deposits.   Plaintiff has recovered a judgment against defendants, in fraud, for the balance of the amount of his intestate's deposit.   This judgment is based upon a jury's findings, as follows: (1) That the bank was insolvent on December 1, 1931; (2) and (3) that all of the directors knew

of such insolvency; and (4) that they all participated in keeping the bank open for the receipt of deposits on December 1, 1931.

These findings will support a judgment such as rendered here. (*Cassidy* v. *Uhlmann*, 170 N. Y. 505.)

The only serious question is whether or not the evidence supports the findings. Appellants raise three questions of law which will first be briefly considered.

Appellants complain of an order of the trial court striking out paragraphs 8 and 9 of the amended answer of all the defendants, excepting the defendant Conley, which set up, as a defense to this action, the fact that plaintiff has filed his claim with the Banking Department and participated in the funds derived from the bank's liquidation. We have already held in a previous appeal herein that the allegations contained in those paragraphs do not constitute a defense in this action. (240 App. Div. 803.)

Appellants also contend that it was error for the trial court to receive in evidence certain reports of the State bank examiner, on the ground that section 41 of the Banking Law provides that " All reports of examiners and special agents shall be confidential communications." No authorities are cited in either brief on this question. We think that this provision was not intended to apply to a situation such as we have here, when one of the issues is the knowledge which the directors had of the bank's insolvency.

The third legal point raised by appellants is their claim that it was error for the trial court to permit the plaintiff to prove, and enlarge upon, the fact that the defendants, as directors of the bank, permitted the bank to make personal loans to themselves in large amounts, aggregating more than the capital stock of the bank. Plaintiff was precluded from showing that, since the closing of the bank, judgments have been recovered against some of the directors, by the Superintendent of Banks, on the loans made to them, and that the judgments are uncollected. It would seem that, since the insolvency of the bank and knowledge of such insolvency on the part of the directors, are the two issues in the case, considerable freedom should be permitted to inquire into loans permitted by the directors, especially such large loans made to the directors themselves. We do not find any error under this head.

Coming, then, to the questions of fact, as to insolvency and knowledge of it on the part of the defendants. Was the bank insolvent on December 1, 1931? Both briefs use the following summary statement of the condition of the bank as a basis for testing this question:

ASSETS

| | | |
|---|---:|---:|
| Capital. | $100,000 | 00 |
| Surplus. | 25,000 | 00 |
| Profit and loss. | 41,729 | 82 |
| Reserve for contingencies | 26,000 | 00 |
| Real estate reserve. | 4,000 | 00 |
| | $196,729 | 82 |

LIABILITIES (LOSS FROM ASSETS).

| | | |
|---|---:|---:|
| Bond depreciation | $176,522 | 50 |
| Loan depreciation. | 19,658 | 90 |
| Mortgage depreciation. | 2,100 | 00 |
| Real estate depreciation. | 3,100 | 00 |
| | $201,381 | 40 |

This is not the usual form of bank balance sheet, but the parties are agreed in using it. Appellants, in their brief, also admit that the foregoing summary statement, on its face, and without taking other facts into consideration, shows insolvency.

Appellants contend that the small deficit of $4,651.58, indicated in the foregoing statement, does not show such " hopeless insolvency " as to preclude an honest belief, on the part of the defendants, that the bank would be able to work out of its temporary difficulties. Appellants urge that " hopeless insolvency " or " irretrievable insolvency " and the directors' knowledge of it are the tests of liability on the part of defendants, relying on such cases as *Cassidy* v. *Uhlmann* (170 N. Y. 505) and *Cragie* v. *Hadley* (99 id. 131).

In those cases the issue of insolvency was not seriously involved. " Hopeless insolvency " was assumed, and the cases dealt only with questions growing out of such insolvency. We do not understand that those cases lay down the rule that a bank must be hopelessly insolvent before the directors are put to the duty of declining to receive further deposits. A situation could never become so serious that men would not hope against hope that something would happen to afford relief. Section 295 of the Penal Law, which makes it a crime for any officer of an insolvent bank, knowing of its insolvency, to receive deposits, says nothing about " hopeless insolvency."

And it is also true that the liability of defendants does not depend upon an actual intent to cheat or defraud the plaintiff. (*Nathan* v. *Uhlmann*, 101 App. Div. 388; aff'd., 184 N. Y. 606.)

It is sufficient if plaintiff has shown that the bank was insolvent on December 1, 1931, and that defendants had knowledge of such insolvency. Appellants contend that insolvency is not shown, since the preponderance of liabilities over assets of only $4,651.58, as shown by the foregoing summary statement, is more than overcome by the $25,000 of assets described in Exhibit 26. The circumstances of the genesis of that fund are as follows: Following an examination of the bank on August 5, 1931, the Superintendent of Banks of the State of New York determined that there was an impairment of capital to the extent of $15,999.90. With the approval of the Superintendent of Banks, nine of the fourteen defendants entered into an agreement (Exhibit 26) with the bank, dated August 15, 1931, in pursuance of which they deposited in the Central Trust Company of Rochester cash and securities aggregating $25,000 to secure depositors against loss. But, according to this agreement, this fund was to serve as security to depositors only " until the securities of the State Bank of Commerce of Brockport, New York, have appreciated sufficiently in the opinion of the New York State Banking Department to protect said depositors," and that the actual use of the $25,000 fund for the benefit of depositors was only to be made " in case of a possible liquidation of the State Bank of Commerce of Brockport, New York."

The $25,000 did not appear in the bank's statement, and was not available for the payment of the creditors of the bank as a going concern. The trial court charged the jury " that the $25,000 deposit with the Central Trust Company in the month of August, 1931, by the directors should be regarded as an asset of the State Bank of Commerce." Even if the correctness of that charge be assumed, we think that the jury could find, on this record, that the bank was insolvent. The trial court charged, and we think it is true, that, in the case of a banking corporation, solvency requires not only that the bank have assets equal to liabilities, but that it should be able to pay its obligations as they come due in the usual and ordinary course of banking business. (*Ferry* v. *Bank of Central New York*, 15 How. Pr. 445; 7 C. J. 727; *Cronkleton* v. *Ebmeier*, 38 F. [2d] 748; *Higgins* v. *Worthington*, 12 App. Div. 361; *Oakley* v. *Paterson Bank*, 2 N. J. Eq. 173; *Federal Reserve Bank* v. *Idaho Grimm Alfalfa Seed Growers' Assn.*, 8 F. [2d] 922; *Roberts* v. *Hill*, 24 Fed. 571; *State* v. *Myers*, 54 Kan. 206; 38 P. 296; *Commonwealth* v. *Tradesmen's Trust Co. of Phila.*, 237 Penn. St. 316; 85 A. 363; *State* v. *Childers*, 202 Iowa, 1377; 212 N. W. 63; *State* v. *Hightower*, 187 N. C. 300; 121 S. E. 622; *Park* v. *First National Bank*, 23 Ga. App. 167; 97 S. E. 888; *Collman* v. *State*, 161 Ark. 351; 256 S. W. 357; *Wilkin* v. *State*, 121 Ark. 219; 180 S. W. 512; *Steele* v. *Com-*

*missioner of Banks,* 240 Mass. 394; 134 N. E. 401; *Sanders* v. *Owens,* [Mo.] 47 S. W. [2d] 132; *Sturdivant* v. *State,* [Ala.] 142 So. 116; *State* v. *Rodman,* 57 N. D. 230; 221 N. W. 25; *Denny, Banking Commissioner,* v. *Thompson,* 236 Ky. 714; 33 S. W. [2d] 670; *Florida Bank & Trust Co.* v. *Yaffey,* 102 Fla. 723; 136 So. 399.)

Between January 1 and December 1, 1931, this bank had suffered a steady withdrawal of its deposits, to meet which it had borrowed of other banks over $200,000, for which it had pledged nearly every quick asset which it owned. And among its notes were those given to the bank by the directors themselves, and aggregating more than the entire capital stock of the bank. The jury might well find that the bank, on December 1, 1931, had reached a state where it could not meet the demands that were likely to be made upon it in the usual and ordinary course of banking business, and was, therefore, insolvent.

The judgment should be modified on the facts by striking out the extra allowance of costs, and as modified, together with the order denying a motion for a new trial, affirmed, with costs to the respondent. The order granting an extra allowance of costs should be reversed on the facts and the motion denied.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Judgment modified on the facts by striking out the additional allowance for costs and as modified, together with the order denying a motion for a new trial, affirmed, with costs to the respondent. Order granting an additional allowance reversed on the facts and motion denied.