STEVEN OPERATING, INC., Plaintiff,

v.

HOME STATE SAVINGS, et al., Defendants.

No. C–3–80–334.

United States District Court, S.D. Ohio, W.D.

Oct. 25, 1984.

Richard A. Frye, Michael P. Mahoney, Columbus, Ohio, for plaintiff.

Armistead W. Gilliam, Jr., Dayton, Ohio, defendant Home State Sav. Ass'n.

Douglas Cole, Richard Heiser, Cincinnati, Ohio, for Horowitz defendants.

## DECISION AND ENTRY ON PENDING MOTIONS; TRIAL DATE SET; PRELIMINARY PRETRIAL CONFERENCE TO BE HELD WHEN SUCCESSOR COUNSEL FOR HOROWITZ DEFENDANTS ENTERS CASE

RICE, District Judge.

The captioned cause came on to be heard upon a plethora of motions. Said motions, the Court's rulings thereon, and, whenever necessary, the reasoning behind said rulings, follow:

2. The Motion for a Protective Order filed by Clark Wideman, a non-party witness, the Superintendent of the Ohio Division of Building and Loan Associations, on September 23, 1980 (Doc. #89), seeking to be protected against discovery sought by the Plaintiff, allegedly to protect the confidentiality of the Division's Examination Reports and other records concerning *Home State Savings Association*, being the Examination Reports of the Association for 1975, 1976, and 1977, is moot by virtue of Home State Savings Association's dismissal as a Defendant to the Plaintiff's Complaint.

Had this Motion not have been moot, same would have been overruled in its entirety.

Initially, it must be mentioned that the scope of the subpoena served on Mr. Wideman is much broader than he alleged in his Motion for Protective Order. For example, a designation of matters for examination included with the subpoena asked for live testimony as to three things, to wit: (1) the basis on which it is claimed that the files and records, including the examination re-

ports of the Division, relating to *Home* are "privileged and non-discoverable"; (2) the general policy of the Division on civil discovery of examination reports, and the Division's general policy regarding the release of examination reports, either routinely or in special circumstances, to persons outside the Division; and (3) the circumstances under which the Division took back the copies of the Reports of Examination of *Home* which were in its possession, custody or control in early 1979. It is clear that, under any broad definition of privilege, these are discoverable items. Had the request not been moot, Mr. Wideman (or his successor) would have been ordered to respond to them.

Insofar as the Examination Reports and testimony concerning the contents of same are concerned, this Court does not believe that Ohio Revised Code § 1155.16 sets up a privilege under Ohio law. In *In Re Frye*, 155 O.S. 345 (1951), privileges in Ohio were narrowly limited to those set forth in the Constitution or by statute. The statute in question (1155.16) does not create a privilege but rather sets forth a requirement or mandate of confidentiality on the part of the Superintendent and his subordinates. It is clear that Ohio law applies in this diversity case, rather than its federal counterpart.

Revised Code § 1155.16 has been amended since the briefing in this matter. The amended section, effective May 19, 1982, appears to restrict the Superintendent even further in what he is allowed to reveal, indicating that information is to be released only in connection with criminal proceedings "or when it is necessary for them to take official action regarding the affairs of the Building and Loan Association examined...." Its predecessor, in effect at the time of the briefing of the Motion in question, seemed to create a "public duty" exception, allowing the Superintendent to release the information when the public duty required him to report upon or to take official action regarding the affairs of the Building and Loan Association examined. This "public duty exception" would, in this

Court's opinion, have clearly allowed a court subpoena to issue securing the information in question. The new statute is more narrowly drawn. In this Court's opinion, newly amended Section 1155.16 does not create a privilege, however, in view of the fact that the Ohio General Assembly knows very well how to create a privilege and failed to do so, with reference to this statute, by requiring only that the information in question be kept "secret". *Compare* Ohio Revised Code Section 3332.-12 (information cannot be used or disclosed and cannot be used in subsequent proceeding); Section 3716.03(C)(2) (evidence cannot be used in criminal prosecution); Section 5523.31 (not admissible as evidence).

Had this Motion not been rendered moot, this Court would have required the Plaintiff to state why the information sought remained relevant or reasonably calculated to lead to the discovery of relevant, admissible evidence, in the light of Home State's dismissal from this lawsuit. Had the Plaintiff been able to do so, as indicated, the Motion would have been overruled.

In this Court's opinion, had the Plaintiff been able to satisfy the Court that this discovery request remained viable, the factual data contained in the report would have been discoverable and the commentary, to the extent that it deals with expressions of intent by bank officials, would likewise have been discoverable. The analysis by the banking examiners, however, would appear to be non-discoverable. An *in camera* inspection of the documents would have been conducted by this Court.

6. The Motion of the Defendant, *Home State Savings Association*, seeking an order of the Court excluding evidence of oral agreements, filed February 19, 1981 (Doc. # 110) is moot, in view of the fact that *Home State* was dismissed as a party Defendant to the Plaintiff's Complaint on March 17, 1981, and that the "cudgels" were taken up by the Horowitz Defendants in its Motion of June 17, 1981, (Doc. # 150). This ruling of mootness supersedes this Court's Decision and Entry of June 26, 1981 (Doc. # 149) deferring ruling on this Motion, pending further procedures.

7. The Motion of the Horowitz Defendants, seeking an order of the Court excluding evidence of oral agreements, filed June 17, 1981 (Doc. # 150), adopting the above-referenced Motion of Home Savings & Loan Association (Doc. # 110) is overruled.

The Defendants seek to prohibit being introduced at trial evidence of alleged oral agreements to transfer an interest in land and evidence of alleged oral modifications of written agreements involving an interest in land. Further, the Defendants seek to prohibit all reference to prior or contemporaneous oral agreements which contradict terms of the written agreement in question. In short, the Defendant's Motion is based upon both statute of frauds and parol evidence grounds.

For a specific listing of what it is that the Defendants seek to prohibit, see pages 1 and 2 of Doc. # 136.

 Ohio law controls. This is both a breach of contract and a fraud action. It is this Court's feeling that all of the evidence sought to be prohibited is admissible on the fraud counts, the only restriction being that of relevancy. The Defendants' argument that the Plaintiff must choose as to whether he is proceeding upon a contractual violation or upon a fraud count is not well taken. Likewise, there need not be a "prima facie showing of fraud" prior to the introduction of the "sought to be prohibited evidence" on the fraud counts. This Court would analogize this to the Sixth Circuit rule on conspiracy, holding that it is not necessary that a prima facie showing of conspiracy be shown prior to admitting co-conspirator's statements. The Sixth Circuit holds, in conspiracy cases, that all of the evidence comes in, in whatever order the prosecution chooses to offer it. Then, when the prosecution rests its case, the prosecution bears the burden of having failed to show sufficient indicia of a conspiracy to withstand a motion to strike. Likewise, in this Court's opinion, all of the evidence is admissible on fraud. In the

same vein, the evidence is admissible, since the jury will be hearing it on the fraud count, on the breach of contract count as well. At the conclusion of the Plaintiff's case, should the Court deem the evidence not admissible, in whole or in part, upon the contract counts, the evidence can be stricken from the jury's consideration of those counts. As a practical matter, it makes no difference, because if this evidence is stricken, then the contract counts cannot survive and the same will be dismissed by this Court, upon a directed verdict, without the jury ever having had the opportunity to consider those counts.

In refusing to rule prior to trial on the admissibility of this evidence, this Court concludes that, while an argument can be made that said evidence is inadmissible, the question of admissibility quite often turns on when the evidence is offered, how and against whom it is offered, the context in which it is offered, etc. These are matters that can only be determined at trial.

■ As a gratuitous aside, this Court does not believe that a mortgage loan commitment, without more, is within the statute of frauds, since it does not transfer an interest in land. It is no more than "an opportunity contract", an agreement to keep money available if called on, which does not either convey an interest in land or obligate a borrower to convey a mortgage. Unfortunately, there are no Ohio cases directly on point. In *Holtz v. Lovejoy,* 30 Ohio L.Rep. 114 (Cuyahoga Cty. App.1929), the Court assumed, without discussion, that an option to purchase real estate comes within the statute of frauds. In this Court's opinion, an option to purchase real estate is not analogous to a mortgage loan commitment, for the reason that the former constitutes an equitable form of ownership of the real estate, for the term of the option, and, as such, could operate to cause a cloud upon the title. A mortgage loan commitment, on the other hand, does not result in any encumbrance, lien or equitable ownership of the real estate in question. *The Huntington Towers Limited* case, 559 F.2d 863 (2d Cir.1977) is contrary to this Court's reasoning. However, that Court applied New York law. The New York statute of frauds is much broader than its Ohio counterpart; so broad in fact that this Court has no difficulty in agreeing with the decision of the Second Circuit, in applying New York law, that a mortgage loan commitment did, indeed, fit within the broad spectrum of the New York statute of frauds.

■ Also as a gratuitous comment, this Court does not believe that the parol evidence rule applies to the Horowitz Defendants, in that there appears to be no integrated document between the parties that is clear and unambiguous.

8. The Motion of the Horowitz Defendants seeking leave to file an amended cross-claim against Home Savings, filed April 3, 1981 (Doc. # 119), is sustained.

■ Basically, the amended cross-claim adds a complaint under RICO to the already existing indemnification claim. *Home's* most viable argument, other than the statute of limitations argument, is that it settled with the Plaintiff, based on what it felt was the "frozen in concrete" state of the pleadings. While this is unfortunate for Home State, this Court does not feel that such a factor, in and of itself, justifies denying the Motion to Amend. Moreover, this Court does not feel that there has been a sufficient showing of bad faith and dilatory motive, etc., to justify denial of the Motion.

■ The most viable argument against the Motion to File the Amended Cross-Claim is the fact that said claim is barred by the applicable statute of limitations. Since the RICO statute contains no statute of limitations, recourse must be had to the most appropriate state limitations statute. The Horowitz Defendants, in support of their Motion to Amend the Cross-Claim, argue for the applicability of the six year statute of limitations for "a liability founded upon statute" set forth in Revised Code § 2305.07. This Court finds the counter argument of *Home* to be persuasive. It is *Home's* position that the aforesaid 2305.07

does not apply, in that that Section sets forth a statute of limitations for a *liability* created by statute, whereas RICO creates not a new liability, but rather only a remedy. In short, the liabilities sought to be covered by the application of the RICO statute to these facts sound ·in fraud, a liability that existed at common law. RICO, the argument goes, does no more than create a new remedy for common law fraud. As such, 2305.07, not creating a liability, does not apply, and one must look to the statute of limitations that applies to the legal theory underlying the application of the RICO statute in this case, to wit, fraud. That approach would result in the utilization of a shorter statute of limitations (four years), one which might bar the Amended Cross-Claim.

Three possible statute of limitations apply in this case: 1) six-years for liability created by statute (R.C. Section 2305.07); 2) four-years for fraud (R.C. Section 2305.09) and 3) one-year for statute imposing a penalty or forfeiture (R.C. Section 2305.11). Of these, the third, Section 2305.11, is clearly inapplicable. In *Englander Motors, Inc. v. Ford Motors Co.*, 293 F.2d 802 (6th Cir.1961), the Sixth Circuit rejected an argument that civil antitrust actions were penal in nature because of the availability of punitive damages; hence, the Court held that Section 2305.11 did not apply to antitrust actions. A similar argument is made herein—the availability of treble damages makes RICO a penal statute. This Court feels that the decision in *Englander Motors, Inc., supra*, dispenses with any argument that RICO is a penal statute of statute of limitations purposes. Thus, Section 2305.11 is clearly not applicable.

Of the two remaining choices, this Court concludes that the four-year statute for fraud (R.C. Section 2305.09) is the most analogous statute of limitations. Accordingly, it should be applied.

Initially, this Court agrees with the argument that RICO provides a remedy rather than creating a liability. As such, RICO actions do not come within the ambit of Section 2305.07. Therefore, Section 2305.09 is the only possible statute to apply. In *Hawkins v. Furnace Co.*, 40 Ohio St. 507 (1884), the Ohio Supreme Court said: "We therefore interpret the phrase, 'a liability created by a statute', to mean a liability which would not exist but for the statute." *Id.* at 515. *Accord Hocking Valley R. Co. v. New York Coal Co.*, 217 F. 727, 730 (6th Cir.1914). "When a common-law right of action is incorporated into a statute, such enactment does not bring the right of action within the purview of a statute of limitations limiting the time to six years for bringing of 'An action upon ... a liability created by a statute.' " *Hartford Accident & Indemnity Co. v. Procter & Gamble Co.*, 91 Ohio App. 573 (Hamilton Cty. 1952) (¶ 3 of the syllabus).

The amended cross-claim is nothing more than common law fraud allegations clothed in the season's fashion: RICO. Thus, RICO is not a statute which creates a liability, and Section 2305.07 is not applicable. A similar conclusion was reached by the Court in *Connelly v. Balkwill*, 174 F.Supp. 49, 63–64 (N.D.Ohio 1959), *aff'd per curiam*, 279 F.2d 685 (6th Cir.1960). In *Connelly*, the court concluded that Section 2305.09 rather than Section 2305.07 was the appropriate statute of limitations for a securities fraud action, because the federal securities laws provided remedies rather than creating liabilities.

Even assuming *arguendo* that RICO does create a liability, thus making it *possible* to apply Section 2305.07, Section 2305.09 is the *most analogous* statute of limitations, which is the relevant inquiry, for the reason that the RICO claim herein is predicated upon fraud.

The mere fact that one might argue that RICO creates a liability by statute does mean that Section 2305.07 is the most analogous statute of limitations. For instance, the Civil Rights Acts, Sections 1981, 1982, 1983 and 1985, are certainly statutes which create liabilities. Nevertheless, under relevant Sixth Circuit law, Section· 2305.07 is not necessarily the applicable statute of limitations. *See Kilgore v. City of Mansfield*, 679 F.2d 632 (6th Cir.1982); *Sutton*

*v. Bloom,* 710 F.2d 1188 (6th Cir.1983). Thus, a 1983 action for false arrest is governed by the one-year period in Section 2305.11 for false imprisonment and not Section 2305.07. *Kilgore, supra.*

Finally, a number of federal courts have considered which state statute of limitations apply to civil RICO actions. When the RICO action is based on allegations for fraud, those courts have uniformly concluded that the most analogous state statute of limitations is the one for common law fraud. *D'Iorio v. Adonizio,* 554 F.Supp. 222 (M.D.Pa.1982) (Pa. law); *Eisenberg v. Gagnon,* 564 F.Supp. 1347 (E.D.Pa.1983) (Pa. law); *Kirschner v. Cable/Tel Corp.,* 576 F.Supp. 234 (E.D.Pa.1983) (Pa. law); *State Farm Fire and Cas. Co. v. Estate of Caton;* 540 F.Supp. 673 (N.D.Ind.1982) (Ind. law). *See also, Durante Bros. & Sons, Inc. v. Flushing Nat. Bank,* 571 F.Supp. 489 (E.D.N.Y.1983) (Applying New York law and concluding that civil RICO action alleging usurious interest and collection of bad debts is governed statute of limitations for recovery of overcharge of interest).

This Court's ruling that the four-year statute of limitations applies to the amended cross-claim, does not, in and of itself, dispose of the question of whether that cross-claim can viably be maintained. Issues of *fact* remain to be determined, by the trier of fact, on the issue of when the cross-claim plaintiffs (the Horowitz Defendants) knew or should have known of the fraud, etc. If the cross-claim Defendant (Home State) feels that there is no genuine issue of material fact on this issue, it may move for summary judgment on the RICO claim set forth in the amended cross-claim.

9. The Motion of Home Savings, seeking an Order of the Court striking the Cross-Claims against the officers and directors (Warner, Bongard and Shiebel) set forth in the Answer filed by the Horowitz Defendants on April 7, 1981 to the Plaintiff's Amended Complaint, said Motion filed on April 29, 1981 (Doc. # 129) is, since said Cross-Claim was filed in a manner that was not procedurally correct, construed as a motion for leave to file said Cross-Claim and is sustained. Fed.R.Civ.P. 61.

The Horowitz Defendants will take whatever steps necessary to effect service of this Cross-Claim upon the new Cross-Claim Defendants, Warner, Bongard, and Scheibel.

Following this Court's discussion of its rulings on the foregoing Motions, during a conference call between Court and counsel on Friday, August 31, 1984, Counsel Cole advised this Court that his clients had expressed their wishes, should the Court rule as it did on the Motion to Disqualify, that they have the same counsel for both trial on the Complaint and trial on the Amended Cross-Claim. Therefore, Counsel Douglas Cole felt compelled to withdraw from representation in this case. This Court has given the Horowitz Defendants a period of 30 to 45 days within which to secure successor counsel. A trial date of March 4, 1985, was set, before a duly empaneled jury, conditioned upon the schedule availability of successor counsel for the Horowitz Defendants. As soon as that successor counsel enters an appearance, the Court will convene a further preliminary pretrial conference in order to assess the viability of the aforementioned trial date and to set dates for the cut-off on discovery, the filing of motions, etc.