CHERRY GROVE SAVINGS & LOAN COMPANY *v.* OHIO DEPOSIT GUARANTEE FUND ET AL.

(No. 85-CV-1071—Decided August 28, 1986.)

Court of Common Pleas of Clermont County.

*Jeff V. Bamber* and *Gary A. Rosenhoffer,* for plaintiff.

*David S. Cupps,* for defendants Ohio Deposit Guarantee Fund et al.

*Roger J. Makley,* for defendant David Schiebel.

WATSON, J. Plaintiff, Cherry Grove Savings and Loan Company, filed its complaint on December 12, 1985, alleging, *inter alia,* negligence, fraud, and conversion against defendant, Ohio Deposit Guarantee Fund (hereinafter "ODGF"), and negligence, fraud and breach of fiduciary duty against defendant ODGF officers and members of its board of trustees. Defendants filed their answers commencing on February 11, 1986.

Plaintiff filed its first request for production of documents on February 12, 1986, and its second request on February 27, 1986.

On March 13, 1986, ODGF filed its response under Civ. R. 34 to the first request.

In Request No. 1, plaintiff asked for all examination reports prepared by state savings and loan examiners for Home State Savings Bank from 1975 to 1985. In Request No. 2, plaintiff asked for all examination reports prepared by state savings and loan examiners for ODGF from 1975 to 1985. In Request No. 3, plaintiff asked for all audit reports of Home State Savings Bank in the ODGF's possession for 1975 to 1985. Defendant ODGF objected to Request Nos. 1, 2 and 3 on the grounds that production by it is barred under R.C. 1155.16, and that the requests are overbroad as to time and seek information which is irrelevant, inadmissible and not reasonably calculated to lead to the discovery of admissible evidence.

Further, in Request No. 4, plaintiff seeks all ODGF auditor reports from 1975 to 1985. In Request No. 5, plaintiff seeks all ODGF board meeting minutes from 1975 to the present. In Request No. 6, plaintiff seeks all ODGF executive committee meeting minutes from 1975 to the present. In Request No. 7, plaintiff seeks all ODGF advisory committee meeting minutes from 1975 to the present. In Request No. 12, plaintiff seeks all reports, statements of condition and mailings from ODGF to its members from 1975 to the present. In Request No. 13, plaintiff seeks the text of all speeches given at ODGF annual meetings from 1975 to the present.

ODGF, without waiving objection as to time overbreadth, irrelevancy, in-

admissibility and lack of reasonable calculation leading to discovery of admissible evidence, has agreed to make items requested in Nos. 4, 5, 6, 7, 12 and 13 available for inspection, only for the years 1980 to 1985.

Additionally, in Request Nos. 8 and 9, plaintiff seeks all correspondence between ODGF and Home State for 1975 to the present. In Request Nos. 10 and 11, plaintiff seeks all correspondence between ODGF and the State Division of Building and Loan Associations regarding Home State from 1975 to 1985. ODGF objected on grounds of time overbreadth, irrelevancy and inadmissibility, and lack of reasonable calculation to lead to the discovery of admissible evidence. Further, defendant objected that production is contrary to R.C. 1155.16. Without waiving the objections, defendant has agreed to make documents from 1980 to 1985 available for inspection to the extent not contrary to R.C. 1155.16.

On April 8, 1986, plaintiff filed its memorandum in support of allowing discovery. On April 23, 1986, ODGF filed its memorandum contra plaintiff's memorandum. Plaintiff filed a reply memorandum on May 5, 1986.

In opposing the discovery sought, ODGF argues that R.C. 1155.16 applies to impose a mandatory secrecy requirement upon ODGF as to any information regarding the affairs of the Superintendent of Building and Loan Associations as to the Home State and savings and loan crises and as to its history and events leading up to the crises about which plaintiff seeks discovery. Defendant argues that R.C. 1155.16 requires that plaintiff seek this discovery from the superintendent, and not from ODGF. It argues that R.C. 1155.16's secrecy requirements do not lose vitality and that the confidentiality mandate applies even though Home State and ODGF are defunct for all intents and purposes. Further, ODGF argues that as to the examination reports particularly, the cover warning requires confidentiality so that it cannot disclose the reports to plaintiff. ODGF further asserts that it has not waived any privilege in connection with non-disclosure of the items sought, and that the plaintiff's requests are overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

In support of discovery, plaintiff argues that R.C. 1155.16 does not apply to prevent ODGF from disclosing to plaintiff the items sought, inasmuch as R.C. 1155.16 operates as a penalty and must be strictly construed against the state as applying only to disclosures by the superintendent or Division of Building and Loan Associations' personnel. Plaintiff asserts that the rule on discovery, Civ. R. 34, provides for discovery from persons with possession as opposed to ownership, so that ODGF is a proper entity to provide discovery and not necessarily only the superintendent. Plaintiff further argues that the examination report cover warning on confidentiality lacks the force of law as it is not supported by a statute or regulation on same, so the ODGF is not precluded from disclosing the reports. Plaintiff adds that the fact that Home State and ODGF are defunct shows no continuing vitality in any legislative purpose to keep materials sought confidential. Plaintiff also maintains that in any event, ODGF lacks standing to object to production under R.C. 1155.16 for the proper party is the superintendent or the division. Additionally, plaintiff says that any privilege to disclose has been waived by defendant in that portions of some reports are indeed public, and that the requests are not overbroad, and will lead to the discovery of admissible evidence.

The court, fully advised in the

premises, and having thoroughly reviewed all pertinent case law, statutes and other material, finds as follows:

The issues presented by the defendant's objections to the various requests are indeed complicated and are not easily resolved. For the following reasons, however, the court finds the objections not well-taken and they are overruled, as set forth herein.

The analysis must necessarily "begin at the beginning." Civ. R. 26(B)(1) provides:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. * * * It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Civ. R. 34(A) provides:

"Subject to the scope of discovery provisions of Rule 26(B) any party may serve on any other party a request to produce and permit the party * * * (1) to inspect and copy, any designated documents * * * which are in the possession, custody or control of the party upon whom the request is served * * *."

The court would note at the outset of this discussion that discovery under Civ. R. 34 is not available for the documents sought as against the Superintendent of Building and Loan Associations, nor against the Division of Building and Loan Associations, for neither is a party in the suit. Discovery is sought herein against the party defendant ODGF per the rule. The court would further note that neither the superintendent nor the division has filed a motion for a protective order or any other motion in response to the request for production by plaintiff.

The initial question to be answered is whether R.C. 1155.16 sets up a privilege under Ohio law, under which discovery per Civ. R. 26 would be prohibited. The case of *Steven Operating, Inc.* v. *Home State Savings Assn.* (S.D. Ohio 1984), 105 F.R.D. 7, is instructive on this point.

In *Home State,* a non-party witness, the superintendent, was served a subpoena which asked for testimony about and for production of examination reports of Home State for 1975, 1976 and 1977. The court, however, noting the question was moot because of Home State's dismissal from the suit, found that R.C. 1155.16 does not set up a privilege under Ohio law.

The *Home State* court noted that the Ohio Supreme Court in *In re Frye* (1951), 155 Ohio St. 345, 44 O.O. 320, 98 N.E. 2d 798, narrowly limited privileges to those set forth in the Constitution or by statute. *Home State* found that R.C. 1155.16 does not create a privilege but rather sets forth a requirement of confidentiality on the part of the superintendent and his subordinates. The court noted that the pre-amendment R.C. 1155.16 created a "public duty exception" which would have required the disclosure sought. *Id.* at 8-9. Finding the 1984 amendment "more narrowly drawn," the court nevertheless found that "newly amended Section 1155.16 does not create a privilege, however, in view of the fact that the Ohio General Assembly knows very well how to create a privilege and failed to do so, * * * by requiring only that the information in question be kept 'secret.' " *Id.* at 9. The *Home State* court cited R.C. 3332.12, 3716.03(C)(2), and 5523.31 as examples of legislative creations of privilege. *Id.*

The *Home State* court went on to say that if the plaintiff had articulated why the examination reports remained relevant and why the information sought was reasonably calculated to

lead to the discovery of admissible evidence in light of Home State's dismissal from the lawsuit, the superintendent's motion for protective order would have been overruled. The court would have permitted discovery of the factual data and commentary to the extent it dealt with expressions of intent of bank officials in the reports. The court noted, however, that the analysis by the examiners "would appear to be non-discoverable," but would have conducted an *in-camera* inspection. *Id.*

The *Home State* lawsuit, as noted by examiners in the 1982 report on Home State, attached to plaintiff's reply memorandum as Exhibit A at 61-62, was a suit for breach of contract on an alleged mortgage loan commitment against Home State and for fraud and breach of contract against the Horowitz Funding and Finance Corporations, which corporations then cross-claimed against Home State for indemnification. This court can understand the reasoning behind the *Home State* dicta as to the potential lack of relevancy of the portions of the reports regarding any analysis or conclusions of the examiners pertaining to the mortgage loan commitment breach of contract question or fraud indemnification question. While expressions of intent on the part of bank officials would be highly relevant to the issues therein, any opinions of examiners may not have been at all. That scenario, for the court's purposes here, may be contrasted with the relevancy of the opinions and conclusions of examiners in this matter, where the issues are recklessness, negligence, knowledge, fraud, and/or conversion by ODGF and its board members once the conclusions and opinions of state examiners were made known to them. The *Home State* decision is, therefore, in part, highly instructive, and in part, distinguishable.

But *Home State* is not the only case discussing the formation of privilege under Ohio law. In *In re Herrnstein* (P.C. 1941), 20 O.O. 405, 6 Ohio Supp. 260, the court had occasion to analyze whether state statutes pertaining to secrecy requirements of county auditors as to tax returns created a privilege. In discussing whether officials have a privilege from disclosing certain kinds of facts received through their official duties, *Herrnstein* cited 8 Wigmore on Evidence (3 Ed.), Sections 2374 and 2375, with approval. One class of privilege mentioned was communications between officials. 20 O.O. at 411, 6 Ohio Supp. at 266-267. The court stated that there are no matters of fact in the possession of officials concerning solely the internal affairs of public business which ought to be privileged from disclosure when the material relates to an issue in dispute in a court of justice. The court found that the inherent power of a court to compel the production of documents to ascertain the parties' rights is not dependent upon legislative will. *Id.* The court noted the maxim that the public has the right to every man's evidence, and stated that "it follows that all privileges of exemptions from this duty are exceptional and are therefore to be discountenanced." *Id.* at 412, 6 Ohio Supp. at 268. The court stated:

"* * * It is to be observed that whenever the legislature intended to impose some absolute prohibition it has never lacked or failed to use a sufficient number of appropriate words to effect its intention. Therefore, it follows that if the legislature had intended to abrogate the common-law rule as to admissibility of tax returns as evidence and to forbid their use when called upon in courts of law it could have done so by the use of appropriate language. This it not only failed to do but expressly provided in

the act that as to a county auditor or member of a county board of revision * * *." *Id.* at 413, 6 Ohio Supp. at 269.

*Herrnstein,* thus, stands for the principle that unless the legislature sets up a privilege with clear language, no privilege is created.

Analysis of the Revised Code sections cited by the *Home State* court will at this juncture be useful for comparison to demonstrate that R.C. 1155.16 does not set up a privilege. R.C. 5523.31 provides for surveys by the Director of Transportation of public crossings at railroad tracks. He devises a formula for assessing the likelihood of accidents at each crossing and is to prepare a priority list for the protection of such crossings. The statute in clear language provides, however, that the priority list is inadmissible into evidence in any action to recover damages for negligence arising out of any use of the crossing. Likewise, R.C. 3716.03 prohibits the admission into evidence, albeit at only a criminal proceeding, of any evidence obtained by health inspectors regarding the transportation or movement of hazardous substances. Further, R.C. 3332.12, which provides for the revocation of permits for agents of the State Board of School and College Registration, requires "informal conferences" by the board as to any violations on the agent's part, but in clear language prohibits the use of any evidence from the informal conferences at any subsequent proceedings.

Thus, as the *Home State* court said, and as the *Herrnstein* court explained, the legislature knows very well how to set up a statutory privilege. The conclusion is inescapable that the legislature in R.C. 1155.16 did not create a statutory privilege, but merely imposed a secrecy requirement. As *Herrnstein* noted, *supra,* at 407, 6 Ohio Supp. at 263-264, there is a great difference between statutes imposing absolute prohibitions from divulgence and statutes against divulgence except in certain instances.

At this juncture, the court would note that the Missouri case of *In re French* (1926), 315 Mo. 75, 285 S.W. 513, in considering a bank secrecy statute quite similar to R.C. 1155.16, found the statute (Rev. Stat. Mo. 1919, Section 11679) to be unconstitutional. The court would note too that *French* has been cited with approval by at least one Ohio court. See *Parkhurst* v. *Cleveland* (C.P. 1947), 36 O.O. 321, 77 N.E. 2d 735. In *French,* the Supreme Court of Missouri considered the legislature's amendment of the secrecy provision after the court's earlier decision in *Millspaugh* v. *Kesterson* (1925), 307 Mo. 185, 270 S.W. 110. The earlier statute provided for an exception to secrecy for the bank commissioner "when he is called on as a witness in any criminal proceedings or trial in a court of justice." *Millspaugh* had constructed the exception as applicable to both criminal and civil proceedings and trials. The legislature thereafter amended the exception to provide "except when he is called on as a witness in any criminal proceedings or criminal trial in a court of justice." The *French* court found that the legislative intent behind the amendment was to override the *Millspaugh* decision. 315 Mo. at 81, 285 S.W. at 514. The *French* court found persuasive the respondent's constitutional challenge of the statute on the basis of federal equal protection and contravention of the state constitutional provision that forbade the General Assembly from passing any law granting any corporation, association or individual any special or exclusive right, privilege or immunity. The secrecy statute permitted the banking officials to disclose examinations to the Federal Reserve Board or member banks, the United States Cur-

rency Comptroller, state clearing houses and house examiners, but attempted to forbid disclosure to civil litigants in the courts. The *French* court found the differential treatment of the classes of persons entitled to view the exams violative of equal protection and state privileges and immunities principles. The *French* court noted at 83-84, 285 S.W. at 515-516:

"If a litigant in a civil case is forbidden by statute to obtain evidence, otherwise available, then the power of the court to enforce his rights is impaired, and a 'certain remedy' is not 'afforded.'

"This is not an attempt by the Legislature to enact a rule of evidence, nor to define the effect of a certain character of evidence in making out a prima facie case. It is an attempt to say the courts shall not have or use certain evidence, however pertinent or necessary for the proper determination of a case. It is an unconstitutional encroachment upon the proper functions of the courts. * * * It is easy to see how the exact relation of a creditor or a debtor of a bank to other parties to his suit may be proven by the records of the bank in the hands of the commissioner, and how it may be vital to the pursuit of his remedy that such records be produced in evidence. As suggested in the Millspaugh Case, there is no reason why such evidence may be available in a criminal case and not available in a civil case. The only theory upon which the commissioner can be restrained from divulging what he learns in his examination of banks, and from producing in court the records in his custody, is on the ground of public policy; that some public interest may be adversely affected by the revelations which would ensue. We are unable to conceive of any reason why general knowledge of the affairs of a defunct bank discovered in a trial in court would injuriously affect the

public morals, public health, or public safety. What public interest can be served by concealing the methods by which banks are guided to destruction by those entrusted with their control? Ordinarily, we would say the public is entitled to know all about the inside jobs which cause banks to fail, because through such knowledge the people's representatives may apply to remedy for the conditions revealed. So far as appears on the surface, the only persons served by concealment of such condition would be those concerned in bringing it about.

"Since no reason appears anywhere for depriving the courts of the power to produce evidence necessary in a litigated case, we think the Legislature, in that part of the act which forbids the production of the evidence desired, went beyond its constitutional authority."

This court must explain that it is not holding at this juncture that R.C. 1155.16 is unconstitutional in the manner of the *French* determination, for herein plaintiff has not presented such an argument nor does this court need to go that far in resolving the issues presented. *French* is cited rather to demonstrate that the Ohio General Assembly cannot properly curtail the power of a court to enable a civil litigant to discover pertinent evidence on matters in issue in an action unless it has by clear and unambiguous language created a privilege against disclosure for a rational, non-discriminatory purpose. In R.C. 1155.16, the legislature failed to do so.

What then is the function of a bank secrecy provision? In *Maryland Cas. Co. v. Clintwood Bank* (1930), 155 Va. 181, 154 S.E. 492, the court found that state bank secrecy statutes are to be construed to relate to information of a confidential nature affecting the business of a bank and are to be strictly construed when invoked for the limita-

tion of judicial inquiry and are subject to the right of every litigant to produce evidence affecting his substantial rights. The prohibition against disclosure means voluntary disclosure and does not refer to the duty to testify and produce evidence or to the production of discovery leading to the production of evidence. The evil prohibited by secrecy statutes in the voluntary imparting of secret information does not act as an impediment to justice in the courts.

Thus, where an issue at trial is the knowledge which bank directors had of the bank's insolvency in an action for fraud, the examination reports are admissible even though a state secrecy law made the reports confidential communications. *Werner* v. *Crippen* (1935), 245 App. Div. 363, 282 N.Y. Supp. 722. Likewise, where an issue at trial will be the knowledge which state deposit insurance fund officials had of the largest member bank's potential insolvency in an action for fraud, conversion, etc., discovery of the examination reports is relevant and reasonably calculated to lead to the discovery of admissible evidence for trial. See, also, *In re Culhane's Estate* (Mich. 1934), 269 Mich. 68, 256 N.W. 807; *Anderson* v. *Bundy* (Va. 1933), 161 Va. 1, 171 S.E. 501; Annotation (1946), 165 A.L.R. 1302, 1320 *et seq.*; Annotation (1939), 123 A.L.R. 1278; contra *Cousins* v. *Schroeder* (1919), 169 Wis. 438, 172 N.W. 953.

The court also finds that under Civ. R. 34, the requirement of "possession, custody or control" is met as to any items defendant holds, regardless that the examination reports, audits, and correspondence may be subject to the R.C. 1155.16 secrecy provision and per the report covers, property of the state supervisory authorities, not the ODGF.

ODGF has cited several federal court decisions in support of its posi-

tion, including *Barnes* v. *Union Commerce Bank* (Oct. 19, 1976), N.D. Ohio No. C76-687, unreported, which analyzed R.C. 1125.14, the banking counterpart of R.C. 1155.16. It is this court's opinion that in light of the sound reasoning in *Home State, supra,* the *Barnes* court reached an incorrect determination that the bank secrecy provision set up a privilege under Ohio law. *Wolfe* v. *Fulton* (C.P. 1932), 30 Ohio N.P. (N.S.) 238, on which *Barnes* relied, held that where a private individual, who is not an official of the state bank division, but who is a depositor of a bank in the process of liquidation by the superintendent, seeks in a lawsuit to be appointed to represent other depositors, to be given authority to act on their behalf, and to receive from the superintendent information about the liquidation and bank business pertinent to his representation, he has failed to state a cause of action. The court noted the responsibility of the superintendent to oversee the liquidation process and that the court would have no authority to discharge him. Without analysis or citation, the *Wolfe* court, in regard to the plaintiff's prayer to receive information, stated at 240-241:

"Whatever information is allowed by the statutory provisions to be promulgated by the superintendent of banks, he is privileged to divulge in the required official way. It is not incumbent upon him to give to any third person, unconnected with his department[,] any information."

The *Barnes* court apparently took *Wolfe* to mean that the bank secrecy provision set forth an evidentiary privilege, but this court does not read *Wolfe* to so hold. *Wolfe* held only that the petition of plaintiff failed to state a cause, so that a demurrer was proper. *Wolfe* did not address an actual situation where the question of the existence of privilege is implicated in an

evidentiary or discovery sense. Had the *Wolfe* court been confronted with a situation as here where a litigant seeks disclosure of information relevant to a properly stated cause of action, the result may well have denied the existence of a privilege. This court believes that the *Wolfe* court's broad statement that it is not incumbent upon the superintendent to disclose information to any person unconnected with his department is erroneous, for at the time of *Wolfe,* the public duty exception which *Home State* addressed was in operation and would have required disclosure in a lawsuit in a court of justice for evidentiary purposes.

Nor does the court believe that 1933 Ohio Atty. Gen. Ops. No. 712, at 614, required the *Barnes* court to reach its holding. Again, as was the case with *Wolfe,* the Attorney General's opinion does not address the situation where litigants in a court of law seek information relevant to their cause of action, but rather addresses disclosure to individuals, voluntary organizations and voluntary committees, who are not litigants, the precise type of voluntary disclosure that the Virginia court in *Clintwood Bank* targeted as the evil properly prohibited under bank secrecy statutes. Thus, this court does not believe *Barnes* is dispositive of the instant matter. See, also, *Anderson, supra; Culhane, supra.*

Nor does this court find dispositive the federal cases prohibiting disclosure pursuant to federal regulations and statutes that defendant has cited. Plaintiff does not seek discovery of federal examinations which would implicate the federal regulations and federal case-law interpretations of those regulations. The federal cases cited by ODGF do not discuss Ohio law nor do they seek to interpret it, as does this court herein.

As to defendant's particular arguments with respect to disclosure, the court finds as follows. The argument that plaintiff must seek discovery of these items from the superintendent and not from ODGF is without merit. Under Civ. R. 34, plaintiff correctly proceeds against ODGF, which is a party herein. As stated above, the superintendent is not a party and discovery under Civ. R. 34 may not be had. Further, Civ. R. 34 discovery is proper as to those items in ODGF's possession. The argument that the cover statement of confidentiality prohibits discovery is without merit. Neither R.C. 1155.16 nor any cover statement on any report creates an evidentiary or testimonial privilege whereby defendant can avoid Civ. R. 26(B)(1), which permits discovery of any relevant document or thing that is not privileged. The argument that the requests are overbroad in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence is also without merit. The court finds that plaintiff's articulation that the documents will be used to show a history of negligent regulation of Home State Savings Bank by defendants as well as a history of concealment is sufficient to demonstrate that the requests are not overbroad as to time. Were the plaintiff to have requested documents, say, from 1965 to 1985, overbreadth might be indicated; but a ten-year span is not inappropriate in these proceedings. Nor are the documents sought irrelevant. Moreover, the requests seem tailored to discover items which bear directly on the issues in the action. To the extent any items might be for some reason inadmissible, the court is satisfied that the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

As to plaintiff's request for a ruling on defendant's counsel's inspection and copying policies, the court finds

that defendant should be permitted a reasonable time, not less than thirty days from date of entry of this decision, to allow ODGF employees to index as they like and set aside all discovery materials to be copied by plaintiff's counsel or agents. This will allow defendant to maintain document control and to allow discovery to proceed in an orderly fashion. After the expiration of thirty days, when defendant has the material ready for copying and inspection, counsel for defendants shall contact promptly counsel for plaintiff, whereupon counsel or agents will proceed to copy with the machine provided by plaintiff.

*Judgment accordingly.*